## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

_____

NATIONAL FIRE INSURANCE COMPANY OF
HARTFORD, VALLEY FORGE INSURANCE
COMPANY, and TRANSPORTATION                                      Civil Action No: 13 CIV 5774 TPG
INSURANCE COMPANY,

                                             **Plaintiffs,**

              **- v -**

E. MISHAN & SONS, INC.,

                                             **Defendant.**

_____

### COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs, NATIONAL FIRE INSURANCE COMPANY OF HARTFORD (NFICH), VALLEY FORGE INSURANCE COMPANY (VFI) and TRANSPORTATION INSURANCE COMPANY (TIC), foreign corporations, seek Declaratory Judgment pursuant to 28 U.S.C. §§ 2201, 2202 and Rule 57 of the Federal Rules of Civil Procedure for purposes of determining a question of actual, immediate controversy among the parties.  PLAINTIFFS respectfully allege as follows:

### NATURE OF ACTION AND RELIEF SOUGHT

1.      This is an action for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 for the purpose of determining the rights and obligations, if any, relative to eight insurance policies.

2.      PLAINTIFFS seek a declaration that they have no duty to defend or indemnify E. MISHAN & SONS, INC. ("E. MISHAN") with regard to the following class action lawsuits filed against E. MISHAN: (1) *Bonnie Daniell v. Sempris, LLC et al.*, Case No. 2012 CH 44123, in the Circuit Court of Cook County, Illinois (hereafter the

"Daniell Suit"), and (2) *Eric Herman v. Sempris, LLC et al.*, Case No. 1:13-cv-00020, in the United States Court for the Western District of Michigan (hereafter the "Herman Suit") (collectively, the "Underlying Suits").

3.     E. MISHAN tendered the Underlying Suits to PLAINTIFFS and requested a defense and indemnity coverage under the NFICH, VFI and TIC policies.

4.     In response to E. MISHAN's tenders, PLAINTIFFS disclaimed coverage for the Underlying Suits, including any duty to defend E. MISHAN under the NFICH and VFI primary policies in effect for successive policy periods from March 4, 2007 to March 4, 2013 (collectively, the "Primary Policies").

5.     NFICH and VFI disclaimed coverage for the Underlying Suits under the Primary Policies on grounds that, *inter alia*, the allegations in the Daniell Suit and the Herman Suit do not allege covered "bodily injury," "property damage" or "personal and advertising injury."

6.     NFICH and VFI also disclaimed coverage for the Underlying Suits on grounds that the Primary Policies effective for the 3/04/07 to 3/04/10 coverage period contain a "Violation of Statutes That Govern E-mails, Fax, Phone Calls or Other Methods of Sending Material or Information" (hereinafter the "Violation of Statutes Exclusion"); and the Primary Policies effective for the 3/04/10 to 3/04/13 coverage period contain a "Recording and Distribution of Material or Information in Violation of Law Exclusion" (hereinafter the "Violation of Law Exclusion").

7.     NFICH and VFI also disclaimed coverage for the Underlying Suits on grounds that the Primary Policies contain the "Knowing Violation of Rights of Another" exclusion.  Additionally, NFICH and VIF disclaimed coverage with respect to any breach

8.    TIC disclaimed coverage under the TIC umbrella policies in effect from March 4, 2007 to March 4, 2009 (collectively, the "Umbrella Policies") on the grounds that, *inter alia*, the allegations in the Daniell Suit and the Herman Suit do not allege covered "bodily injury," "property damage" or "personal and advertising injury."

9.    TIC also disclaimed coverage on grounds that the Umbrella Policies contain a "Violation of Statutes that Govern Communication of Information" endorsement (hereinafter the "Violation of Statutes that Govern Communication" exclusion), which precludes coverage for "any liability arising directly or indirectly out of any action or omission that violates or is alleged to violate . . . [a]ny statute, ordinance or regulation, . . . that prohibits or limits the sending, transmitting, communicating or distribution of material or information."

10.   TIC disclaimed coverage for any allegations alleging breach of contact under the Umbrella Policies' "Breach of Contract" exclusion.

11.   An actual, immediate controversy exists among the parties regarding whether coverage is afforded under the Primary and Umbrella Policies issued by PLAINTIFFS to E. MISHAN for the claims and alleged damages that are the subject of the Underlying Suits.

## PARTIES

12.   NFICH is a corporation organized and existing under the laws of Illinois with its principal place of business in Chicago, Illinois.

13.   VFI is a corporation organized and existing under the laws of Illinois with its principal place of business in Chicago, Illinois.

14.   TIC is a corporation organized and existing under the laws of Illinois with its principal place of business in Chicago, Illinois.

15.   E. MISHAN is a New York corporation, with its principal place of business in New York, New York.

## JURISDICTION AND VENUE

16.   This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. There is complete diversity of citizenship among the parties and the matter in controversy exceeds the sum of $75,000, exclusive of interest, attorney's fees and costs.

17.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (a) and (c) because a substantial part of the events or omissions giving rise to the claims asserted below occurred within this District.

## GENERAL ALLEGATIONS

18.   NFICH issued five primary commercial general liability policies to E. MISHAN under policy number 2082953557 for the following annual policy periods: (1) 3/04/07 – 3/04/08, (2) 3/04/08 – 3/04/09, (3) 3/04/09 – 3/04/10, (4) 3/04/10 – 3/04/11, and (5) 3/04/12 – 3/04/13.   True and correct copies of the NFICH Primary Policies are attached hereto, respectively, as **Exhibits "A," "B," "C," "D", and "E,"** and are incorporated as if set forth herein.

19.   VFI issued a primary commercial general liability policy to E. MISHAN under policy number 2082953557 for the 3/04/11 – 3/04/12 policy period.   A true and

20. The NFICH and VFI Primary Policies provide limits of liability of $1,000,000 Each Occurrence, $1,000,000 Personal & Advertising Injury, $2,000,000 Products/Completed Operations Aggregate, and $2,000,000 General Aggregate.

21. TIC issued commercial umbrella policies to E. MISHAN under policy number 2092834297 for the following consecutive annual policy periods: (1) 3/04/07 – 3/04/08 and (2) 3/04/08 – 3/04/09 (collectively, the "Umbrella Policies"). The Umbrella Policies provide limits of $10,000,000 Each Incident and $10,000,000 Aggregate, subject to a $10,000 Retained Limit. True and correct copies of the Umbrella Policies are attached hereto, respectively, as **Exhibits "G" and "H,"** and are incorporated as if set forth herein.

A.    **The Primary Policies**[1]

22. Under Coverage A, the Primary Policies provide Commercial General Liability Coverage for "bodily injury" and "property damage," as follows:

> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1.    Insuring Agreement**
>
> **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any

---

[1]    We cite herein the 2012 to 2013 Primary Policy wording and note that the wordings of the six Primary Policies may differ slightly. Nonetheless, all Primary Policy wordings are substantially similar, and we note when necessary where the wordings diverge.

"suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)**     The amount we will pay for damages is limited as described in Section **III** –Limits of Insurance; and

**(2)**     Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverage **A** and **B**.

**b.**     This insurance applies to "bodily injury" and "property damage" only if:

**(1)**     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)**     The "bodily injury" or "property damage" occurs during the policy period; and

**(3)**     Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.

\*   \*   \*

**c.**     "Bodily injury" or "property damage" which occurs during this policy period and was not, prior to the

6

policy period, known to have occurred by any
Insured listed under Paragraph **1.** of Section **II** –
Who is An Insured or any "employee" authorized
by you to give or receive notice of an "occurrence"
or claim, includes any continuation, change or
resumption of that "bodily injury" or "property
damage" after the end of the policy period.

\* \* \*

23.   Under Coverage B, the Primary Policies provide Commercial General

Liability Coverage for "personal and advertising injury," as follows:

### COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**1.     Insuring Agreement**

**a.**     We will pay those sums that the insured becomes
legally obligated to pay as damages because of
"personal and advertising injury" to which this
insurance applies. We will have the right and duty
to defend the insured against any "suit" seeking
those damages even if the allegations of the "suit"
are groundless, false or fraudulent.  However, we
will have no duty to defend the insured against any
"suit" seeking damages for "personal and
advertising injury" to which this insurance does not
apply. We may, at our discretion, investigate any
offense and settle any claim or "suit" that may
result. But:

**(1)**     The amount we will pay for damages is
limited as described as described in Section
**III** –Limits of Insurance; and

**(2)**     Our right and duty to defend end when we
have used up the applicable limit of
insurance in the payment of judgments or
settlements under Coverages **A** or **B** or
medical expenses under Coverage **C**.

No other obligation or liability to pay sums or
perform acts or services is covered unless explicitly
provided for under Supplementary Payments –
Coverage **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

24. The Primary Policies define "occurrence" as:

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

25. The Primary Policies define "personal and advertising injury" as:

"Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement."

26. The Primary Policies define "property damage" as:

"Property damage" means:

     **a.**  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

     **b.**  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.  . . .

27.    The Primary Policies contain the following exclusion applicable to Coverage A, providing that "[t]his insurance does not apply to:"

### Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  . . .

28.    The Primary Policies contain the following exclusions applicable to Coverage B, providing that "[t]his insurance does not apply to:"

**Knowing Violation of Rights of Another**
"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

**Material Published With Knowledge Of Falsity**
"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

\* \* \*

9

**Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement."

29.     The Primary Policies issued by NFICH for the following policy periods: (1) 3/04/07 – 3/04/08 (the "2007-2008 NFICH Primary Policy"); (2) 3/04/08 – 3/04/09 (the "2008-2009 NFICH Primary Policy"); and (3) 3/04/09 – 3/04/10 (the "2009-2010 NFICH Primary Policy"), contain, the **"Exclusion - Violation of Statutes that Govern Email, Fax, Phone Call or Other Methods of Sending Material or Information"** ("Violation of Statutes Exclusion"), which applies to the policy's "bodily injury," "property damage," and "personal and advertising injury" liability coverage, as follows:

**A.** The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section 1 – Coverage A – Bodily Injury And Property Damage Liability**:

**2. Exclusions**

This insurance does not apply to:

DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**B.** The following exclusion is added to Paragraph **2.,
Exclusions** of **Section 1 – Coverage B – Personal And
Advertising Injury Liability:**

**2. Exclusions:**

This Insurance does not apply to:

DISTRIBUTION OF MATERIAL IN VIOLATION OF
STATUTES

"Personal and advertising injury" arising directly or
indirectly out of any action or omission that violates or is
alleged to violate:

**a.**     The Telephone Consumer Protection Act (TCPA),
including any amendment of or addition to such
law; or

**b.**     The CAN-SPAM Act of 2003, including any
amendment of or addition to such law; or

**c.**     Any statute, ordinance or regulation, other than the
TCPA or CAN-SPAM Act of 2003, that prohibits or
limits the sending, transmitting, communicating or
distribution of material or information.

30.     The Primary Policies issued by NFICH for the 3/04/10 – 3/04/11 (the

"2010-2011 NFICH Primary Policy") and 3/04/12 – 3/04/13 (the "2012-2013 NFICH

Primary Policy) policy periods, and the Primary Policy issued by VFI for the 3/04/11 -

3/04/12  period (the "2011-2012 VFI Primary Policy"), contain an endorsement entitled

**"Recording and Distribution of Material or Information in Violation of Law

Exclusion"** (the "Violation of Law Exclusion"), which applies to the policy's "bodily

injury," "property damage," and "personal and advertising injury" liability coverage, as

follows:

A.     Exclusion **q.** of Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

     **2.**      **Exclusions**

This insurance does not apply to:

     **q.**      **Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

     **(1)**      The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

     **(2)**      The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

     **(3)**      The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

     **(4)**      Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

B.     Exclusion **p.** of Paragraph **2. Exclusions** of Section **I – Coverage B – Personal and Advertising Injury Liability** is replaced by the following:

**2.       Exclusions**

This insurance does not apply to:

**p.       Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)**       The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)**       The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)**       The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)**       Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**B.       The Umbrella Policies**

31.       The Umbrella Policies issued by TIC contain the following insuring agreement, in which TIC agrees to provide umbrella coverage for "bodily injury," "property damage," and "personal and advertising injury," as follows:

**SECTION I – COVERAGES**

1.      **Insuring Agreement**

We will pay on behalf of the insured all sums that the insured becomes legally obligated to pay as "ultimate net loss" because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies.

a.      This insurance applies to "bodily injury" and "property damage" only if:

(1)     The "bodily injury" or "property damage" is caused by an "incident" that takes place in the policy territory;

(2)     The "bodily injury" or "property damage" occurs during the policy period; and

\* \* \*

d.      This insurance applies to "personal and advertising injury" caused by an "incident" that takes place during the policy period and in the policy territory.

32.     The Umbrella Policies define "incident" as follows:

**"Incident"**

a.      With respect to "bodily injury" and "property damage," "incident" means an occurrence. An occurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

b.      With respect to "personal and advertising injury," "incident" means an offense arising out of your business.

33.     The Umbrella Policies define "personal and advertising injury" as follows:

**"Personal and Advertising Injury"** means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

1.      False arrest, detention or imprisonment;

2.      Malicious prosecution;

14

    **3.**      Wrongful eviction from, wrongful entry into, or the invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **4.**      Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **5.**      Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **6.**      The use of another's advertising idea in your "advertisement;"

    **7.**      Infringing upon another's copyright, trade dress or slogan in your "advertisement."

34.    The Umbrella Policies define "property damage" as follows:

**"Property damage"** means:

    **a.**      Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**      Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the occurrence that caused it.

For the purposes of this insurance, "electronic data" is not tangible property.

35.    The Umbrella Policies define "retained limit" as follows:

**"Retained limit"** means the amount stated in item **4.** of the Declarations.

36.     The Umbrella Policies define "scheduled underlying insurance" as

follows:

> **"Scheduled underlying insurance"** means the insurance policies listed in the Schedule of Underlying Insurance including renewal or replacement of such contracts which are not more restrictive than those listed in the aforementioned Schedule of Underlying Insurance.

37.     The Umbrella Policies define "ultimate net loss" as follows:

> **"Ultimate net loss"**
>
> **a.**     "Ultimate net loss" means the actual damages the insured is legally obligated to pay, either through:
>
> > **(1)**     final adjudication on the merits; or
> >
> > **(2)**     through compromise settlement with our written consent or direction;
>
> because of "incident(s)" covered by this policy.
>
> However, it includes the above mentioned sums only after deducting all other recoveries and salvages.
>
> **b.**     "Ultimate net loss" does not include the following:
>
> > **(1)**     costs or expenses related to:
> >
> > > **(a)**     litigation,
> > >
> > > **(b)**     settlement;
> > >
> > > **(c)**     adjustment; or
> > >
> > > **(d)**     appeals;
> > >
> > > nor costs or expenses incident to the same which an "underlying insurer" has paid, incurred or is obligated to pay to or on behalf of the insured;

**(2)**   pre-judgment interest;

**(3)**   office costs and expenses and salaries and expenses of the employees of an insured;

**(4)**   our office costs and expenses and salaries of our employees; or

**(5)**   general retainer and/or monitoring fees of counsel retained by the insured.

38.   The Umbrella Policies define "underlying insurer" as follows:

**"Underlying insurer"** means an insurer whose policy covers an "incident" also covered by this policy but does not include insurers whose policies were purchased specifically to be in excess of this policy. It includes all insurers providing:

**a.**   "unscheduled underlying insurance"; and

**b.**   "scheduled underlying insurance".

39.   The Umbrella Policies define "unscheduled underlying insurance" as follows:

**"Unscheduled underlying insurance"**

**a.**   "Unscheduled underlying insurance" means insurance policies available to an insured, whether:

**(1)**   primary;

**(2)**   excess;

**(3)**   excess-contingent; or

**(4)**   otherwise;

except the policies listed in the Schedule of Underlying Insurance.

    **b.**    "Unscheduled underlying insurance" does not include insurance purchased specifically to be excess of this policy.

40.    The Umbrella Policies contain the following relevant exclusions:

    2.    **Exclusions**

This insurance does not apply to:

    **a.**    "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

    **b.**    "Personal and advertising injury" arising out of:

        **(1)**    Breach of contract, other than misappropriation of advertising ideas under an implied contract;

\* \* \*

    **c.**    "Personal and advertising injury:"

        **(1)**    Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

41.    The Umbrella Policies contain the **"Exclusion - Violation of Statutes that Govern Communication of Information"** endorsement, which provides in relevant part that:

This insurance does not apply to any liability arising directly or indirectly out of any action or omission that violates or is alleged to violate:

    **a.**    The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

    **b.**    The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

    **c.**    Any statute, ordinance or regulation, other than the TCPA or the CAN-SPAM Act of 2003, that prohibits

or limits the sending, transmitting, communicating or
distribution of material or information.

42.     In addition to the foregoing provisions, PLAINTIFFS plead all other
conditions, terms, warranties, limits, definitions and exclusions contained in the Primary
Policies and Umbrella Policies that may also be found to apply as PLAINITFFS'
investigation of this matter continues, and PLAINTIFFS reserve the right to further amend
the instant Complaint for Declaratory Judgment as additional and/or more specific
information becomes available.

## THE UNDERLYING SUITS

**A.     The Daniell Suit**

43.     On December 13, 2012, Bonnie Daniell (the "Underlying Daniell Plaintiff")
filed a purported class action lawsuit on behalf of herself and a putative class against E.
MICHAN, and others, in the Circuit Court of Cook County, Illinois, County Division.

44.     On or about March 2013, the Underlying Daniell Plaintiff filed an amended
pleading entitled the "First Amended Class Action Complaint" (hereinafter the
"Underlying Daniell Complaint").  A copy of the Underlying Daniell Complaint is attached
hereto **as Exhibit "I."**

45.     The Daniell Suit arises out of an allegation that E. MISHAN, and co-
defendant Sempris LLC, worked together to deceptively charge consumers recurring
monthly fees for Membership Programs that purport to offer discounts and other money
saving deals.  See Ex. I, ¶1.

46.    The Underlying Daniell Plaintiff alleges that on or about July 1, 2012, she visited E. MISHAN's website to purchase a product, and was required to provide her billing and contact information.  See Ex. I, ¶¶35, 36.

47.    The Underlying Daniell Plaintiff further alleges that she declined to enroll in the Sempris Membership Program which was offered to her in a post-purchase e-mail sent by E. MISHAN.  See Ex. I, ¶¶38, 40.

48.    The Underlying Daniell Plaintiff alleges that she discovered a few weeks later that she was enrolled in, and was being charged monthly fees for, the Sempris Membership Program.  See Ex. I, ¶60.

49.    The Underlying Daniell Complaint defines the putative classes as follows: (1) the "Sempris Class" is defined as "[a]ll individuals who were enrolled in and charged for any Sempris Membership Program following their online purchase on an [E. MISHAN] product," and (2) the "Illinois Subclass" is defined as "[a]ll Sempris Class Members who reside in the State of Illinois . . . ."  See Ex. I, ¶45.

50.    The Underlying Daniell Complaint asserts five counts against E. MISHAN. See Ex. I.

51.    In **Count I** of the Underlying Daniell Complaint, the Underlying Daniell Plaintiff, on behalf of herself and the putative Illinois Subclass, asserts violation(s) of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.* ("ICFA"),  See Ex. I, ¶¶69-85.

52.    Count I alleges that the ICFA "prohibits any unlawful, unfair, or fraudulent business acts or practices including the employment of any deception, fraud, false

53.     Count I further alleges that E. MISHAN violated the ICFA by "purposefully conceal[ing], suppress[ing], and/or omit[ting] the material fact that it shares consumers' private billing and contact information with third parties, including Defendant Sempris." See Ex. I, ¶78.

54.     In **Count II**, entitled "Fraud by Omission," the Underlying Daniell Plaintiff, on behalf of herself and the putative Sempris Class, asserts that E. MISHAN "concealed from and failed to disclose to Plaintiff and Class Members the true cost of enrollment in Sempris' Membership Programs, . . ."  See Ex. I, ¶89.

55.     Count II further alleges that "[a]s a direct and proximate result of Defendants' misconduct, Plaintiff and Class Members have suffered and will continue to suffer actual damages in the form of monies taken by Defendants."  See Ex. I, ¶95.

56.     In **Count III**, entitled "Fraudulent Inducement," the Underlying Daniell Plaintiff, on behalf of herself and the putative Sempris Class, asserts that E. MISHAN, and others, "intentionally made misleading representations regarding the program's actual terms and costs, [and that] Defendants intended that consumers would rely and act upon their deceptive and fraudulent misrepresentations."  See Ex. I, ¶¶98, 104.

57.     In **Count IV**, entitled "Breach of Contract," the Underlying Daniell Plaintiff, on behalf of herself and the putative Sempris Class, asserts that she and the Class Members entered into a valid and enforceable contract with E. MISHAN whereby E. MISHAN accepted payment in exchange for goods marketed and sold by E. MISHAN. See Ex. I, ¶108.

58. Count IV further asserts that a material term of this contact was that E. MISHAN would only share Class Members' billing and contact information with those expressly authorized to receive it, and that Class Members did not consent to E. MISHAN's releasing their billing information to Sempris.  See Ex. I, ¶¶109, 110.

59. In **Count V**, entitled "Unjust Enrichment," the Underlying Daniell Plaintiff, on behalf of herself and the putative Sempris Class, asserts that E. MISHAN "knowingly received a monetary benefit from Plaintiff and the Class in the form of fees, revenue share, or other value given by Sempris" when E. MISHAN "wrongfully permitted Sempris to obtain Class members' contact and billing information."  See Ex. I, ¶16.

60. As relief in the Daniell Suit, the Underlying Daniell Plaintiff seeks, on behalf of herself and the putative classes, "injunctive and/or declaratory relief," "all economic, monetary, actual, consequential, statutory, and compensatory damages," exemplary damages, restitution, "reasonable litigation expenses and attorney's fees," pre- and post-judgment interest, and "such other and further relief as equity and justice may require."  See "Prayer for Relief" Clause of Underlying Daniell Complaint at Ex. I.

**B.**     **The Herman Suit**

61. On February 7, 2013, Eric Herman (the "Underlying Herman Plaintiff") filed a purported class action lawsuit on behalf of himself and putative classes against E. MICHAN, and others, in the United States District Court for the Western District of Michigan (hereinafter the "Underlying Herman Complaint").  A copy of the Underlying Herman Complaint is attached hereto as **Exhibit "J."**

62. The Herman Suit arises out of an allegation that E. MISHAN, and co-defendant Sempris LLC, worked together to charge consumers recurring monthly fees for

63.     The Underlying Herman Plaintiff alleges that in or around April 2012, he viewed a television infomercial for an E. MISHAN's product, and that he called the number listed on the screen to purchase the product.  See Ex. J, ¶¶31, 32.

64.     The Underlying Herman Plaintiff further alleges that the telephone representative informed him that the purchase of the E. MISHAN product could not be "authorized" unless the Underlying Herman Plaintiff agreed to be enrolled in a "risk free" trial of the Sempris Membership Program.  See Ex. J, ¶¶34, 35.

65.     Despite allegedly canceling his membership immediately after placing his order, the Underlying Herman Plaintiff alleges that his bank account received several monthly charges before he was finally able to cancel the membership.  See Ex. J, ¶¶38, 38, 41.

66.     The Underlying Herman Complaint defines the putative class as follows: (1) the "Sempris Class," is defined as "[a]ll individuals who were enrolled in a Sempris Membership Program following their telephone purchase of an [E. MISHAN] product"; (2) the "Michigan Subclass," is defined as "[a]ll Sempris Class Members who reside in Michigan"; (3) the "Debit Card Subclass," is defined as "[a]ll Sempris Class Members who had monthly fees for Membership Programs debited directly from their bank accounts by Sempris"; and (4) the "Opt-Out Subclass," is defined as "[a]ll Sempris Class Members who contacted Sempris and requested to cancel their enrollment in a Sempris Membership Program, and thereafter were charged by Sempris for a Sempris Membership Program." See Ex. J, ¶46.

67.     The Underlying Herman Complaint asserts five counts against E. MISHAN. See Ex. J.

68.     In **Count I** of the Underlying Herman Complaint, the Underlying Herman Plaintiff, on behalf of himself and the putative Michigan Subclass, asserts violation(s) of the Michigan Consumer Protection Act, M.C.L. § 445.903 *et seq.* ("MCPA"),  See Ex. J, ¶¶52-67.

69.     Count I also alleges that E. MISHAN violated the MCPA by, *inter alia*, "causing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods of services."  See Ex. J, ¶53.

70.     In **Count II**, entitled "Violations of the Electronic Funds Transfer Act, 15 U.S.C. § 1693e" ("EFTA"), Underlying Herman Plaintiff, on behalf of himself and the putative Debit Card Subclass, asserts that E. MISHAN violated the MCPA by initiating "electronic transfer of funds for unauthorized membership fees from the bank accounts of Plaintiff and the Debit Card Subclass . . . without first obtaining written authorization from them . . ." See Ex. J, ¶69.

71.     In **Count III**, entitled "Fraud by Omission," the Underlying Herman Plaintiff, on behalf of himself and the putative Sempris Class, asserts that E. MISHAN "concealed from and failed to disclose to Plaintiff and Class Members that Sempris would charge them for its membership program without consent and after cancellation."  See Ex. J, ¶77.

72.     Count III further alleges that "[a]s a direct and proximate result of Defendants' misconduct, Plaintiff and the Class have suffered and will continue to suffer actual damages in the form of monies taken by Sempris."  See Ex. J, ¶82.

73.     In **Count IV**, entitled "Breach of Contract," the Underlying Herman Plaintiff, on behalf of himself and the putative Sempris Class, asserts that he and the Class Members entered into a valid and enforceable contract with whereby E. MISHAN accepted payment from Class Members in exchange for goods marketed and sold by E. MISHAN. See Ex. J, ¶84.

74.     Count IV further asserts that a material term of this contact was that E. MISHAN would only share Class Members' billing information with those expressly authorized to receive it, and that Class Members did not consent to E. MISHAN's releasing their billing information to Sempris.  See Ex. J, ¶¶85, 86.

75.     In **Count V**, entitled "Unjust Enrichment," the Underlying Herman Plaintiff, on behalf of himself and the putative Sempris Class, asserts that E. MISHAN "knowingly received a monetary benefit from Plaintiff and the Class in the form of fees, revenue share, or other value given by Sempris" when E. MISHAN "wrongfully permitted Sempris to obtain Class members' contact and billing information."  See Ex. J, ¶92.

76.     As relief, the Underlying Herman Plaintiff seeks, on behalf of himself and the putative classes, "injunctive and/or declaratory relief," "all economic, monetary, actual, consequential, statutory, and compensatory damages," exemplary damages, restitution, "reasonable litigation expenses and attorney's fees," pre- and post-judgment interest, and "such other and further relief as equity and justice may require."  See "Prayer for Relief" Clause of Underlying Herman Complaint at Ex. J.

## ADDITIONAL RELEVANT FACTS

**A.     The Daniell Suit**

77.     E. MISHAN tendered the Daniel Suit to PLAINTIFFS and requested that PLAINTIFFS agree to provide it with defense and indemnity coverage for the claims asserted in the Daniel Suit under the Primary and Umbrella Policies.

78.     PLAINTIFFS issued a letter to E. MISHAN wherein they disclaimed coverage to E. MISHAN for the Daniel Suit, including any duty to defend, under the NFICH and VFI Primary Policies and TIC Umbrella Policies on grounds that, *inter alia*, the allegations in the Daniell Suit do not allege covered "bodily injury," "property damage" or "personal and advertising injury."  A copy of PLAINTIFFS' disclaimer letter for the Daniell Suit is attached hereto as **Exhibit "K."**

79.     PLAINTIFFS also disclaimed coverage for the Daniell Suit on grounds, *inter alia*, that: (1) the Primary Policies contain either the "Violation of Statutes Exclusion" and/or the "Violation of Law Exclusion" which preclude coverage for claims "arising directly or indirectly out of an action or omission that violates or is alleged to violate . . . [a]ny statute, ordinance or regulation, . . . that prohibits or limits the sending, transmitting, communicating or distribution of material or information"; and (2) the Umbrella Policies contain the "Violation of Statutes that Govern Communication" which precludes "any liability arising directly or indirectly out of any action or omission that violates or is alleged to violate . . . [a]ny statute, ordinance or regulation, . . . that prohibits or limits the sending, transmitting, communicating or distribution of material or information."  See Ex. K.

80.     PLAINTIFFS also disclaimed "personal and advertising injury" coverage for the Daniell Suit under the Primary Policies on grounds, *inter alia*, that these contain the "Knowing Violation of the Rights of Another" exclusion, which precludes "personal

81.     PLAINTIFFS disclaimed "personal and advertising injury" coverage under the Primary and Umbrella Policies for the Daniell Suit for any allegations alleging breach of contract, which comprise Count IV of the Underlying Daniell Complaint, on the grounds of the Policies' "Breach of Contract" exclusion.

**B.      The Herman Suit**

82.     E. MISHAN tendered the Herman Suit to PLAINTIFFS and requested that PLAINTIFFS agree to provide it with defense and indemnity coverage for the claims asserted in the Herman Suit under the Primary and Umbrella Policies.

83.     PLAINTIFFS issued a letter to E. MISHAN wherein they disclaimed coverage to E. MISHAN for the Herman Suit, including any duty to defend, under the NFICH and VFI Primary Policies and the TIC Umbrella Policies on grounds that, *inter alia*, the allegations in the Herman Suit do not allege covered "bodily injury," "property damage" or "personal and advertising injury."  A copy of PLAINTIFFS' disclaimer letter for the Herman Suit is attached hereto as **Exhibit "L."**

84.     PLAINTIFFS also disclaimed coverage for the Herman Suit on grounds, *inter alia*, that: (1) the Primary Policies contain either the "Violation of Statutes Exclusion" and/or the "Violation of Law Exclusion" which preclude coverage for claims "arising directly or indirectly out of an action or omission that violates or is alleged to violate . . . [a]ny statute, ordinance or regulation, . . . that prohibits or limits the sending, transmitting, communicating or distribution of material or information."; and (2) the

27

85.     PLAINTIFFS also disclaimed "personal and advertising injury" coverage for the Herman Suit under the Primary Policies on grounds, *inter alia*, that these policies contain the "Knowing Violation of the Rights of Another" exclusion, which precludes "personal and advertising injury" coverage "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'"  See Ex. L.

86.     PLAINTIFFS disclaimed "personal and advertising injury" coverage for the Herman Suit under the Primary and Umbrella Policies for any allegations alleging breach of contract, which comprise Count IV of the Underlying Herman Complaint, on the grounds of the Policies' "Breach of Contract" exclusion.  See Ex. L.

## COUNT I

**FOR DECLARATORY JUDGMENT THAT THE NFICH AND VFI PRIMARY POLICIES DO NOT OWE A DUTY TO DEFEND THE DANIELL SUIT**

87.     NFICH and VFI hereby incorporate by reference all preceding paragraphs as if fully set forth herein.

88.     NFI and VFI do not owe a duty to defend E. MISHAN in the Daniell Suit under the Primary Policies for the following reasons:

a.     The Daniell Suit does not allege a "bodily injury."

b.   The Daniell Suit does not allege "property damages."

c.   The Daniell Suit does not allege "personal and advertising injury."

d.   Even if the Daniell Suit alleged "bodily injury" or "property damage," which it does not, any alleged "bodily injury" or "property damage" was not caused by an "occurrence" during the Primary Policy periods.

e.   Even if the Daniell Suit alleged "personal and advertising injury," which it does not, any alleged "personal and advertising injury" was not caused by "offense" during the Primary Policy periods.

f.   Even if the Daniell Suit alleged "bodily injury" or "property damage," which it does not, the "Expected or Intended" exclusion bars coverage.

g.   Even if the Daniell Suit alleged "bodily injury" or "property damage" caused by an "occurrence" during the Primary Policy periods, which it does not, the "Violation of Statutes Exclusion" contained in the 2007-2008 NFICH Primary Policy, the 2008-2009 NFICH Primary Policy, and the 2009-2010 NFICH Primary Policy bars coverage.

h.   Even if the Daniell Suit alleged "bodily injury" or "property damage" caused by an "occurrence" during the Primary Policy periods, which it does not, the "Violation of Law Exclusion" contained in the 2010-2011 NFICH Primary Policy, the 2011-2012 VFI Primary Policy, and the 2012-2013 NFICH Primary Policy bars coverage.

i.   Even if the Daniell Suit alleged "personal and advertising injury" caused by an offense committed during the Primary Policy periods, which it does not, the "Violation of Statutes Exclusion" contained in the 2007-2008 NFICH Primary Policy, the 2008-2009 NFICH Primary Policy, and the 2009-2010 NFICH Primary Policy bars coverage.

j.   Even if the Daniell Suit alleged "personal and advertising injury" caused by an offense committed during the Primary Policy periods, which it does not, the "Violation of Law Exclusion" contained in the 2010-2011 NFICH Primary Policy, the 2011-2012 VFI Primary Policy, and the 2012-2013 NFICH Primary Policy bars coverage.

k.   Even if the Daniell Suit alleged "personal and advertising injury" caused by an offense committed during the Primary Policy periods,

l.      Even if the Daniell Suit alleged "personal and advertising injury" caused by an offense committed during the Primary Policy periods, which it does not, the Primary Policies exclude coverage for "'personal and advertising injury' arising out of a breach of contract, . . .'"

m.      Claims for injunctive relief, equitable relief including restitution, and statutory fines including exemplary penalties do not seek "damages" as that term is used in the Primary Policies.

89.     E. MISHAN disagrees with NFICH's and VFI's coverage position and maintains that NFICH and VFI owe a duty to defend E. MISHAN under the Primary Policies with regard to the Daniell Suit.

90.     An actual and immediate controversy exists among the parties concerning whether the Primary Policies require NFICH and VFI to defend E. MISHAN in the Daniell Suit.

91.     Pursuant to 28 U.S.C. §§ 2201 and 2202, NFICH and VFI seek a judicial determination that they have no duty to defend E. MISHAN under the Primary Policies with respect to the Daniell Suit.

## COUNT II

### FOR DECLARATORY JUDGMENT THAT THE NFICH AND VFI PRIMARY POLICIES DO NOT OWE A DUTY TO DEFEND THE HERMAN SUIT

92.     NFICH and VFI hereby incorporate by reference all preceding paragraphs as if fully set forth herein.

93.     NFICH and VFI do not owe a duty to defend E. MISHAN in the Herman Suit under the Primary Policies for the following reasons:

a.    The Herman Suit does not allege a "bodily injury."

b.    The Herman Suit does not allege "property damages."

c.    The Herman Suit does not allege "personal and advertising injury."

d.    Even if the Herman Suit alleged "bodily injury" or "property damage," which it does not, any alleged "bodily injury" or "property damage" was not caused by an "occurrence" during the Primary Policy periods.

e.    Even if the Herman Suit alleged "personal and advertising injury," which it does not, any alleged "personal and advertising injury" was not caused by "offense" during the Primary Policy periods.

f.    Even if the Herman Suit alleged "bodily injury" or "property damage," which it does not, the "Expected or Intended" exclusion bars coverage.

g.    Even if the Herman Suit alleged "bodily injury" or "property damage" caused by an "occurrence" during the Primary Policy periods, which it does not, the "Violation of Statutes Exclusion" contained in the 2007-2008 NFICH Primary Policy, the 2008-2009 NFICH Primary Policy, and the 2009-2010 NFICH Primary Policy bars coverage.

h.    Even if the Herman Suit alleged "bodily injury" or "property damage" caused by an "occurrence" during the Primary Policy periods, which it does not, the "Violation of Law Exclusion" contained in the 2010-2011 NFICH Primary Policy, the 2011-2012 VFI Primary Policy, and the 2012-2013 NFICH Primary Policy bars coverage.

i.    Even if the Herman Suit alleged "personal and advertising injury" caused by an offense committed during the Primary Policy periods, which it does not, the "Violation of Statutes Exclusion" contained in the 2007-2008 NFICH Primary Policy, the 2008-2009 NFICH Primary Policy, and the 2009-2010 NFICH Primary Policy bars coverage.

j.    Even if the Herman Suit alleged "personal and advertising injury" caused by an offense committed during the Primary Policy periods, which it does not, the "Violation of Law Exclusion" contained in the 2010-2011 NFICH Primary Policy, the 2011-2012 VFI Primary Policy, and the 2012-2013 NFICH Primary Policy bars coverage.

k.  Even if the Herman Suit alleged "personal and advertising injury" caused by an offense committed during the Primary Policy periods, which it does not, the Primary Policies exclude coverage for "'personal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'"

l.  Even if the Herman Suit alleged "personal and advertising injury" caused by an offense committed during the Primary Policy periods, which it does not, the Primary Policies exclude coverage for "'personal and advertising injury' arising out of a breach of contract, . . ."

m.  Claims for injunctive relief, equitable relief including restitution, and statutory fines including exemplary penalties do not seek "damages" as that term is used in the Primary Policies.

94.  E. MISHAN disagrees with NFICH's and VFI's coverage position and maintains that NFICH and VFI owe a duty to defend E. MISHAN under the Primary Policies with regard to the Herman Suit.

95.  An actual and immediate controversy exists among the parties concerning whether the Primary Policies require NFICH and VFI to defend E. MISHAN in the Herman Suit.

96.  Pursuant to 28 U.S.C. §§ 2201 and 2202, NFICH and VFI seek a judicial determination that they have no duty to defend E. MISHAN under the Primary Policies with respect to the Herman Suit.

## **COUNT III**

### **FOR DECLARATORY JUDGMENT THAT THE NFICH AND VFI PRIMARY POLICIES DO NOT OWE A DUTY TO INDEMNIFY THE DANIELL SUIT**

97.  NFICH and VFI hereby incorporate by reference all preceding paragraphs as if fully set forth herein.

98.     NFICH and VFI do not owe a duty to indemnify E. MISHAN under the

Primary Policies in the Daniell Suit for the following reasons:

     a.     The Daniell Suit does not allege a "bodily injury."

     b.     The Daniell Suit does not allege "property damages."

     c.     The Daniell Suit does not allege "personal and advertising injury."

     d.     Even if the Daniell Suit alleged "bodily injury" or "property damage," which it does not, any alleged "bodily injury" or "property damage" was not caused by an "occurrence" during the Primary Policy periods.

     e.     Even if the Daniell Suit alleged "personal and advertising injury," which it does not, any alleged "personal and advertising injury" was not caused by "offense" during the Primary Policy periods.

     f.     Even if the Daniell Suit alleged "bodily injury" or "property damage," which it does not, the "Expected or Intended" exclusion bars coverage.

     g.     Even if the Daniell Suit alleged "bodily injury" or "property damage" caused by an "occurrence" during the Primary Policy periods, which it does not, the "Violation of Statutes Exclusion" contained in the 2007-2008 NFICH  Primary  Policy,  the  2008-2009 NFICH Primary Policy, and the 2009-2010 NFICH Primary Policy bars coverage.

     h.     Even if the Daniell Suit alleged "bodily injury" or "property damage" caused by an "occurrence" during the Primary Policy periods, which it does not,  the  "Violation of Law Exclusion" contained in the 2010-2011 NFICH  Primary  Policy,  the  2011-2012 VFI Primary Policy, and the 2012-2013 NFICH Primary Policy bars coverage.

     i.     Even if the Daniell Suit alleged "personal and advertising injury" caused by     an offense committed during the Primary Policy periods, which it does not,     the "Violation of Statutes Exclusion" contained in the 2007-2008 NFICH  Primary  Policy,  the  2008-2009 NFICH Primary Policy, and the 2009-2010 NFICH Primary Policy bars coverage.

     j.     Even if the Daniell Suit alleged "personal and advertising injury" caused by     an offense committed during the Primary Policy

      k.     Even if the Daniell Suit alleged "personal and advertising injury" caused by an offense committed during the Primary Policy periods, which it does not, the Primary Policies exclude coverage for "'personal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'"

      l.      Even if the Daniell Suit alleged "personal and advertising injury" caused by an offense committed during the Primary Policy periods, which it does not, the Primary Policies exclude coverage for "'personal and advertising injury' arising out of a breach of contract,. . ."

      m.    Claims for injunctive relief, equitable relief including restitution, and statutory fines including exemplary penalties do not seek "damages" as that term is used in the Primary Policies.

99.    E. MISHAN disagrees with NFICH's and VFI's coverage position and maintains that NFICH and VFI owe a duty to indemnify E. MISHAN under the Primary Policies with regard to the Daniell Suit, including any settlement negotiated among the parties and/or judgment rendered against E. MISHAN in the Daniell Suit.

100.    An actual and immediate controversy exists among the parties concerning whether the Primary Policies require NFICH and VFI to indemnify E. MISHAN in the Daniell Suit.

101.    Pursuant to 28 U.S.C. §§ 2201 and 2202, NFICH and VFI seek a judicial determination that they have no duty to indemnify E. MISHAN under the Primary Policies with respect to the Daniell Suit.

**COUNT IV**

**FOR DECLARATORY JUDGMENT THAT THE NFICH AND VFI PRIMARY
POLICIES DO NOT OWE A DUTY TO INDEMNIFY THE HERMAN SUIT**

102.    NFICH and VFI hereby incorporate by reference all preceding paragraphs

as if fully set forth herein.

103.    NFICH and VFI do not owe a duty to indemnify E. MISHAN under the

Primary Policies in the Herman Suit for the following reasons:

a.     The Herman Suit does not allege a "bodily injury."

b.     The Herman Suit does not allege "property damages."

c.     The Herman Suit does not allege "personal and advertising injury."

d.     Even if the Herman Suit alleged "bodily injury" or "property damage,"
       which it does not, any alleged "bodily injury" or "property damage" was not
       caused by an "occurrence" during the Primary Policy periods.

e.     Even if the Herman Suit alleged "personal and advertising injury," which it
       does not, any alleged "personal and advertising injury" was caused by
       "offense" during the Primary Policy periods.

f.     Even if the Herman Suit alleged "bodily injury" or "property damage,"
       which it does not, the "Expected or Intended" exclusion bars coverage.

g.     Even if the Herman Suit alleged "bodily injury" or "property damage"
       caused by an "occurrence" during the Primary Policy periods, which it does
       not, the "Violation of Statutes Exclusion" contained in the 2007-2008
       NFICH Primary Policy, the 2008-2009 NFICH Primary Policy, and the
       2009-2010 NFICH Primary Policy bars coverage.

h.     Even if the Herman Suit alleged "bodily injury" or "property damage"
       caused by an "occurrence" during the Primary Policy periods, which it does
       not, the "Violation of Law Exclusion" contained in the 2010-2011 NFICH
       Primary Policy, the 2011-2012 VFI Primary Policy, and the 2012-2013
       NFICH Primary Policy bars coverage.

i.     Even if the Herman Suit alleged "personal and advertising injury" caused
       by an offense committed during the Primary Policy periods, which it does
       not, the "Violation of Statutes Exclusion" contained in the 2007-2008
       NFICH Primary Policy, the 2008-2009 NFICH Primary Policy, and the
       2009-2010 NFICH Primary Policy bars coverage.

j.      Even if the Herman Suit alleged "personal and advertising injury" caused by an offense committed during the Primary Policy periods, which it does not, the "Violation of Law Exclusion" contained in the 2010-2011 NFICH Primary Policy, the 2011-2012 VFI Primary Policy, and the 2012-2013 NFICH Primary Policy bars coverage.

k.      Even if the Herman Suit alleged "personal and advertising injury" caused by an offense committed during the Primary Policy periods, which it does not, the Primary Policies exclude coverage for "'personal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'"

l.      Even if the Herman Suit alleged "personal and advertising injury" caused by an offense committed during the Primary Policy periods, which it does not, the Primary Policies exclude coverage for "'personal and advertising injury' arising out of a breach of contract, . . ."

m.      Claims for injunctive relief, equitable relief including restitution, and statutory fines including exemplary penalties do not seek "damages" as that term is used in the Primary Policies.

104.    E. MISHAN disagrees with NFICH's and VFI's coverage position and maintains that NFICH and VFI owe a duty to indemnify E. MISHAN under the Primary Policies with regard to the Herman Suit, including any settlement negotiated among the parties and/or judgment rendered against E. MISHAN in the Herman Suit.

105.    An actual and immediate controversy exists among the parties concerning whether the Primary Policies require NFICH and VFI to indemnify E. MISHAN in the Herman Suit.

106.    Pursuant to 28 U.S.C. §§ 2201 and 2202, NFICH and VFI seek a judicial determination that they have no duty to indemnify E. MISHAN under the Primary Policies with respect to the Herman Suit.

**COUNT V**

36

**FOR DECLARATORY JUDGMENT THAT THE TIC UMBRELLA POLICIES
DO NOT OWE A DUTY TO DEFEND THE DANIELL SUIT**

107.    TIC hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

108.    TIC does not owe a duty to defend E. MISHAN under the Umbrella Policies in the Daniell Suit for the following reasons:

  a.    The Daniell Suit does not allege a "bodily injury."

  b.    The Daniell Suit does not allege "property damages."

  c.    The Daniell Suit does not allege "personal and advertising injury."

  d.    Even if the Daniell Suit alleged "bodily injury" or "property damage," which it does not, any alleged "bodily injury" or "property damage" was not caused by an "incident" during the Umbrella Policy periods.

  e.    Even if the Daniell Suit alleged "personal and advertising injury," which it does not, any alleged "personal and advertising injury" was not caused by "incident" during the Umbrella Policy periods.

  f.    Even if the Daniell Suit alleged "bodily injury" or "property damage," which it does not, the "Expected or Intended" exclusion bars coverage.

  g.    Even if the Daniell Suit alleged "bodily injury," "property damage" or "personal and advertising injury" caused by an "incident" during the Umbrella Policy periods, which it does not, the "Violation of Statutes that Govern Communication" exclusion bars coverage.

  h.    Even if the Daniell Suit alleged "bodily injury," "property damage" or "personal and advertising injury" caused by an "incident" during the Umbrella Policy periods, which it does not, the Umbrella Policies exclude coverage for "'personal and advertising injury' arising out of . . . [b]reach of contract, other than the misappropriation of advertising ideas under an implied contract."

  i.    Claims for injunctive relief, equitable relief including restitution, and statutory fines including exemplary penalties do not seek "ultimate net loss" as that term is used in the Umbrella Policies.

109.    E. MISHAN disagrees with TIC's coverage position and maintains that TIC owes a duty to defend E. MISHAN under the Umbrella Policies with regard to the Daniell Suit.

110.    An actual and immediate controversy exists among the parties concerning whether the Umbrella Policies require TIC to defend E. MISHAN in the Daniell Suit.

111.    Pursuant to 28 U.S.C. §§ 2201 and 2202, TIC seeks a judicial determination that it has no duty to defend E. MISHAN under the Umbrella Policies with respect to the Daniell Suit.

## COUNT VI

### FOR DECLARATORY JUDGMENT THAT THE TIC UMBRELLA POLICIES DO NOT OWE A DUTY TO DEFEND THE HERMAN SUIT

112.    TIC hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

113.    TIC does not owe a duty to defend E. MISHAN under the Umbrella Policies in the Herman Suit for the following reasons:

    a.    The Herman Suit does not allege a "bodily injury."

    b.    The Herman Suit does not allege "property damages."

    c.    The Herman Suit does not allege "personal and advertising injury."

    d.    Even if the Herman Suit alleged "bodily injury" or "property damage," which it does not, any alleged "bodily injury" or "property damage" was not caused by an "incident" during the Umbrella Policy periods.

    e.    Even if the Herman Suit alleged "personal and advertising injury," which it does not, any alleged "personal and advertising injury" was not caused by "incident" during the Umbrella Policy periods.

       f.      Even if the Herman Suit alleged "bodily injury" or "property damage," which it does not, the "Expected or Intended" exclusion bars coverage.

       g.     Even if the Herman Suit alleged "bodily injury," "property damage" or "personal and advertising injury" caused by an "incident" during the Umbrella Policy periods, which it does not, the "Violation of Statutes that Govern Communication" exclusion bars coverage.

       h.     Even if the Herman Suit alleged "bodily injury," "property damage" or "personal and advertising injury" caused by an "incident" during the Umbrella Policy periods, which it does not, the Umbrella Policies exclude coverage for "'personal and advertising injury' arising out of . . . [b]reach of contract, other than the misappropriation of advertising ideas under an implied contract."

       i.      Claims for injunctive relief, equitable relief including restitution, and statutory fines including exemplary penalties do not seek "ultimate net loss" as that term is used in the Umbrella Policies.

114.    E. MISHAN disagrees with TIC's coverage position and maintains that TIC owes a duty to defend E. MISHAN under the Umbrella Policies with regard to the Herman Suit.

115.    An actual and immediate controversy exists among the parties concerning whether the Umbrella Policies require TIC to defend E. MISHAN in the Herman Suit.

116.    Pursuant to 28 U.S.C. §§ 2201 and 2202, TIC seeks a judicial determination that it has no duty to defend E. MISHAN under the Umbrella Policies with respect to the Herman Suit.

## COUNT VII

### FOR DECLARATORY JUDGMENT THAT THE TIC UMBRELLA POLICIES DO NOT OWE A DUTY TO INDEMNIFY THE DANIELL SUIT

117.    TIC hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

118.   TIC does not owe a duty to indemnify E. MISHAN under the Umbrella Policies in the Daniell Suit for the following reasons:

    a.      The Daniell Suit does not allege a "bodily injury."

    b.      The Daniell Suit does not allege "property damages."

    c.      The Daniell Suit does not allege "personal and advertising injury."

    d.      Even if the Daniell Suit alleged "bodily injury" or "property damage," which it does not, any alleged "bodily injury" or "property damage" was not caused by an "incident" during the Umbrella Policy periods.

    e.      Even if the Daniell Suit alleged "personal and advertising injury," which it does not, any alleged "personal and advertising injury" was not caused by "incident" during the Umbrella Policy periods.

    f.      Even if the Daniell Suit alleged "bodily injury" or "property damage," which it does not, the "Expected or Intended" exclusion bars coverage.

    g.      Even if the Daniell Suit alleged "bodily injury," "property damage" or "personal and advertising injury" caused by an "incident" during the Umbrella Policy periods, which it does not, the "Violation of Statutes that Govern Communication" exclusion bars coverage.

    h.      Even if the Daniell Suit alleged "bodily injury," "property damage" or "personal and advertising injury" caused by an "incident" during the Umbrella Policy periods, which it does not, the Umbrella Policies exclude coverage for "'personal and advertising injury' arising out of . . . [b]reach of contract, other than the misappropriation of advertising ideas under an implied contract."

    i.      Claims for injunctive relief, equitable relief including restitution, and statutory fines including exemplary penalties do not seek "ultimate net loss" as that term is used in the Umbrella Policies.

119.   E. MISHAN disagrees with TIC's coverage position and maintains that TIC owes a duty to indemnify E. MISHAN under the Umbrella Policies with regard to the

120.    An actual and immediate controversy exists among the parties concerning whether the Umbrella Policies require TIC to indemnify E. MISHAN in the Daniell Suit.

121.    Pursuant to 28 U.S.C. §§ 2201 and 2202, TIC seeks a judicial determination that it has no duty to indemnify E. MISHAN under the Umbrella Policies with respect to the Daniell Suit.

## COUNT VIII

### FOR DECLARATORY JUDGMENT THAT THE TIC UMBRELLA POLICIES DO NOT OWE A DUTY TO INDEMNIFY THE HERMAN SUIT

122.    TIC hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

123.    TIC does not owe a duty to indemnify E. MISHAN under the Umbrella Policies in the Herman Suit for the following reasons:

    a.    The Herman Suit does not allege a "bodily injury."

    b.    The Herman Suit does not allege "property damages."

    c.    The Herman Suit does not allege "personal and advertising injury."

    d.    Even if the Herman Suit alleged "bodily injury" or "property damage," which it does not, any alleged "bodily injury" or "property damage" was not caused by an "incident" during the Umbrella Policy periods.

    e.    Even if the Herman Suit alleged "personal and advertising injury," which it does not, any alleged "personal and advertising injury" was not caused by "incident" during the Umbrella Policy periods.

    f.    Even if the Herman Suit alleged "bodily injury" or "property damage," which it does not, the "Expected or Intended" exclusion bars coverage.

g.      Even if the Herman Suit alleged "bodily injury," "property damage" or "personal and advertising injury" caused by an "incident" during the Umbrella Policy periods, which it does not, the "Violation of Statutes that Govern Communication" exclusion bars coverage.

h.      Even if the Herman Suit alleged "bodily injury," "property damage" or "personal and advertising injury" caused by an "incident" during the Umbrella Policy periods, which it does not, the Umbrella Policies exclude coverage for "'personal and advertising injury' arising out of . . . [b]reach ofcontract, other than the misappropriation of advertising ideas under an implied contract."

i.      Claims for injunctive relief, equitable relief including restitution, and statutory fines including exemplary penalties do not seek "ultimate net loss" as that term is used in the Umbrella Policies.

124.    E. MISHAN disagrees with TIC's coverage position and maintains that TIC owes a duty to indemnify E. MISHAN under the Umbrella Policies with regard to the Herman Suit, including any settlement negotiated among the parties and/or judgment rendered against E. MISHAN in the Herman Suit.

125.    An actual and immediate controversy exists among the parties concerning whether the Umbrella Policies require TIC to indemnify E. MISHAN in the Herman Suit.

126.    Pursuant to 28 U.S.C. §§ 2201 and 2202, TIC seeks a judicial determination that it has no duty to indemnify E. MISHAN under the Umbrella Policies with respect to the Herman Suit.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS, respectfully pray for judgment against E. MISHAN, as follows:

a.      Declaring that NFICH and VFI have no duty to defend E. MISHAN under the Primary Policies in the Daniell Suit;

b.      Declaring that NFICH and VFI have no duty to defend E. MISHAN under the Primary Policies in the Herman Suit;

c.      Declaring that NFICH and VFI have no duty to indemnify E. MISHAN under the Primary Policies in the Daniell Suit;

d.      Declaring that NFICH and VFI have no duty to indemnify E. MISHAN under the Primary Policies in the Herman Suit;

e.      Declaring that TIC has no duty to defend E. MISHAN under the Umbrella Policies in the Daniell Suit;

f.      Declaring that TIC has no duty to defend E. MISHAN under the Umbrella Policies in the Herman Suit;

g.      Declaring that TIC has no duty to indemnify E. MISHAN under the Umbrella Policies in the Daniell Suit;

h.      Declaring that TIC has no duty to indemnify E. MISHAN under the Umbrella Policies in the Herman Suit;

i.      For such other and further relief as this Court deems just and proper, including but not limited to, an award PLAINTIFFS' fees and costs in this action.

Dated:  August 16, 2013

Respectfully submitted,

**COLLIAU CARLUCCIO KEENER MORROW
PETERSON & PARSONS**

By: Lisa Shreiber, Esq.
125 Broad St, 7th Floor
New York, NY 10004
(212) 440-7327
Lisa.Shreiber@CNA.com
*Attorneys for Plaintiffs National Fire Insurance Co.
of Hartford, Valley Forge Insurance Co., and
Transportation Insurance Co.*

Of Counsel:
Barrett Breitung, Esq.
Colliau Carluccio Keener Morrow Peterson & Parsons
333 South Wabash Ave., 25th Floor
Chicago, IL 60604
(312) 822-5047
Email: Barrett.Breitung@cna.com