UNITED STATES DISCTIRCT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, VALLEY FORGE INSURANCE COMPANY, <br><br> Plaintiffs, <br><br> v. <br><br> E. MISHAN & SONS, INC., a New York corporation d/b/a EMSON, INC. <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) |

Civil Action No: 13-CIV-5774-TPG

## DEFENDANT, E. MISHAN & SONS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

NOW COMES Defendant, E. Mishan & Sons, Inc. doing business as Emson, Inc., by and through its counsel, LEAHY, EISENBERG & FRAENKEL, LTD, and in support of its Motion for Summary Judgment, filed pursuant to Federal Rule of Civil Procedure 56, states as follows:

### INTRODUCTION

In accordance with the terms of the primary commercial general liability policies ("Primary Policies") at issue in this Declaratory Judgment Action, Plaintiffs National Fire Insurance Company of Hartford ("NFICH") and Valley Forge Insurance Company ("VFIC") (collectively, "Primary Insurers"), have a duty to defend Defendant, E. Mishan & Sons, Inc. ("Emson") in the underlying *Daniell* and *Herman* Class Action Suits, which are currently pending in the Circuit Court of Cook County, Illinois, and the U.S. District Court for the Western District of Michigan, respectively.

1

Even a perfunctory comparison of the allegations set forth in the *Daniell* and *Herman* Complaints with the terms of the Primary Policies reveals that there is—at the very least—a *reasonable possibility* of coverage, which is all that is necessary to trigger Primary Insurers' exceedingly broad duty to defend. Specifically, the primary thrust of the *Daniell* and *Herman* Complaints is Emson's alleged wrongful conduct in disclosing the Class Plaintiffs' private billing information to third parties. In striking concordance, the Primary Policies describe this very conduct as one of several offenses covered under the Primary Policies' "personal and advertising injury" coverage—*i.e.*, "[o]ral or written publication, in any manner, of material that violates a person's right to privacy." Thus, the *Daniell* and *Herman* Complaints allege conduct that fits squarely within the coverage afforded by the Primary Policies. The mere potential for such coverage, in conjunction with Primary Insurers' inability to disprove such coverage by way of exclusions, triggers Primary Insurers' duty to defend.[1]

## CHOICE OF LAW

"In a diversity case, federal courts generally apply the substantive law of the forum state." *Burt Rigid Box v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 92 (2d Cir.2002) (citations omitted). The place where a contract is issued is also relevant for choice of law

---

[1] Where an insurer breaches the insurance policy by failing to provide its insured with a defense in the underlying action, the insurer must not only provide its insured with a defense, it also must reimburse the insured for any and all legal costs incurred by the insured in its defense of the underlying action. *GRE Ins. Grp. v. GMA Accessories*, 691 N.Y.S.2d 244, 248 (Sup. Ct. 1998). Thus, Emson's Motion for Summary Judgment on the issue of the duty to defend encompasses Primary Insurers' concomitant obligation to reimburse Emson for any and all legal costs incurred thus far in defending the underlying *Daniell* and *Herman* suits.

Moreover, although an award of costs and attorney fees may not be recovered in a declaratory judgment action brought by an insured to settle its rights under the policy, such an award is appropriate where the insured "has been cast in a defensive posture by the legal steps an insurer takes in an effort to free itself from its policy obligations." *Id.* (quotations omitted). Since Emson's insurers brought this declaratory judgment action seeking to free themselves from their policy obligations, upon the Court's finding that Primary Insurers have a duty to defend Emson in the underlying actions, Emson will be entitled to recover its costs and reasonable attorney fees incurred in successfully defending this action thus far. *Id.* (citations omitted).

2

purposes. *Commercial Union Ins. Co. v. Horne*, 787 F.Supp. 337, 339 (S.D.N.Y. 1992). The location where the insured resides similarly bears upon which state's law applies. *Andy Warhol Found. for Visual Arts, Inc. v. Feds. Ins. Co.*, 189 F.3d 208, 214 (2d Cir. 1999).

In this case, New York is both the forum state and the state in which the Primary Policies were issued to Emson, which is a New York corporation with its principal place of business in New York. Thus, under the relevant choice-of-law principles, New York's substantive law governs this Declaratory Judgment Action.

### *Summary Judgment*—**Legal Standard**

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Flaherty v. Filardi*, 388 F.Supp.2d 274, 285 (S.D.N.Y. 2005) (emphasis added). "The party against whom summary judgment is sought must do more than simply show that there is some metaphysical doubt as to the material facts....the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir.2002) (internal quotations omitted).

## ARGUMENT

### I.   PRIMARY INSURERS HAVE A DUTY TO DEFEND EMSON IN THE UNDERLYING *DANIELL* AND *HERMAN* CLASS ACTION SUITS.

#### *Duty to Defend*—Legal Standard

New York courts have consistently held that an insurer seeking to avoid its duty to defend bears a "heavy burden"—a burden which, in practice, is seldom met.   *City of Johnstown, N.Y. v. Bankers Std. Ins. Co.*, 877 F.2d 1146, 1149 (2d Cir. 1989).   To determine if a defense obligation exists, courts "compare the allegations of the complaint to the terms of the policy."   *Bridge Metal Indus., L.L.C. v. Travelers Indem. Co.*, 812 F.Supp.2d 527, 535 (S.D.N.Y. 2011).   "If the facts alleged raise a *reasonable possibility* that the insured may be held liable for some act or omission, then the insurer must defend."   *Id.* (emphasis added); *Specialty Nat. Ins. Co. v. English Bros. Funeral Home*, 606 F. Supp. 2d 466, 470 (S.D.N.Y. 2009).   In other words, "where the complaint contains allegations that bring the claim even *potentially* within the policy's coverage, the insurer is obligated to defend."   *Ogden Corp. v. Travelers Indem. Co.,* 924 F.2d 39, 41 (2d Cir.1991) (emphasis added).   "Only where there is no possible factual or legal basis upon which the insurer might eventually be held obligated to indemnify the insured may the insurer be relieved of the obligation to defend."   *Burroughs Wellcome Co. v. Comm, Union Ins. Co.*, 632 F. Supp. 1213, 1219 (S.D.N.Y. 1986) (internal quotations omitted).   All doubts and ambiguities as to whether the allegations state a claim within the coverage of the policy must be resolved in favor of the insured.   *Petito v. Beaver Concrete Breaking Co., Inc.*, 613 N.Y.S.2d 523, 527 (1994).

4

A.    The *Daniell* and *Herman* Complaints Allege Conduct By Emson That Falls Squarely Within The Scope Of An Offense Defined Under The "Personal and Advertising Injury" Coverage Of The Primary Policies.

In Counts I and II of their Declaratory Judgment Complaint, Primary Insurers allege that they do not owe a duty to defend Emson in the underlying *Daniell* and *Herman* Suits, purportedly because the Suits do not allege "personal and advertising injury." (Doc. #1 at ¶ 29(c), ¶ 31(c)). Contrary to Primary Insurers' unsupported allegations, when the conduct by Emson as alleged in the *Daniell* and *Herman* Complaints is compared with the terms of the Primary Policies, it is evident that the *Daniell* and *Herman* Complaints *do* allege "personal and advertising injury" within the coverage afforded by the Primary Policies.

Among other types of liability coverage, the Primary Policies insure against "personal and advertising injury," which is defined, *inter alia*, as follows:

> "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:
>
> *          *          *
>
> e.    Oral or written publication, in any manner, of material that violates a person's right of privacy;"

(*See e.g.*, Doc. #1-1, p.21).

The definition of the above offense easily encompasses the very conduct Emson is alleged to have committed by disclosing Class Plaintiffs' private billing information to third parties in the *Daniell* and *Herman* Complaints. Indeed, the Second Circuit Court of Appeals has repeatedly recognized "the existence of a constitutionally protected interest in the confidentiality of personal financial information." *Statharos v. New York City Taxi & Limousine Comm'n*, 198 F.3d 317, 322-23 (2d Cir. 1999); *see also Eisenbud v. Suffolk County*, 841 F.2d 42, 45 (2d Cir.1988) (right to privacy exists as to financial information).

The recognized constitutional right to privacy in personal information is more precisely characterized as a right to "confidentiality." *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1994). Thus, the above authorities confirm that a person's right to privacy includes the secrecy of his or her financial information, the violation of which is the gravamen of the *Daniell* and *Herman* Complaints.

The following examples of allegations in the *Daniell* Complaint demonstrate that Emson's disclosure of the Class Plaintiffs' private billing information to third parties is the conduct for which the Class Plaintiffs seek to impose liability on Emson:

- "...the consumer provides his/her private billing and contact information. However, rather than protect the sensitive information shared by the consumer (as any consumer would reasonably believe), *Emson transfers this information* to its business partner—Quality Resources..."

- "From the outset of the call, Quality Resources is already in possession of the consumers' billing information (such as certain billing information, including all or part of the consumer's credit or bank card number and billing address) that *Emson provided or made available to it* as part of the data pass."

- "Without consent, *Emson secretly shares its customers information* with Quality Resources for telemarketing purposes..."

- Plaintiff and members of the Class did not consent to *Emson releasing their billing or contact information* to Quality Resources..."

(Ex. A, ¶¶ 3, 4, 115 149) (emphasis added in all).[2]

Likewise, the following examples of allegations in the *Herman* Complaint also demonstrate that Emson's disclosure of the Class Plaintiffs' private billing information to third parties is the conduct for which the Class Plaintiffs seek to impose liability on Emson:

---

[2] "Ex. A" refers to the true and accurate copy of the *Daniell* Complaint (Second Amended Class Action Complaint), which is submitted as an exhibit to Emson's Statement of Facts on Motion for Summary Judgment.

- "*Emson transfers the consumer's private contact, billing, and order information to its business partner*, Defendant Quality Resources, a third-party telemarketer."

- "From the outset of the call, Quality Resources is already in possession of the consumers' billing and contact information (including all or part of the consumer's credit or debit card number and billing address) that *Emson provided or made available to it* as part of the data pass."

- "Unbeknownst to the consumer...*Emson and/or an agent acting on Emson's behalf immediately transfers or makes available the consumer's private information* to Quality Resources..."

- "Plaintiff and the other members of the Class did not agree to allow *Emson to transfer their billing information* for the purposes of allowing a third party to charge their accounts."

(*Herman* Compl., Ex. B, ¶¶ 2, 3, 34 153).[3]

These selected examples epitomize the numerous allegations in the *Daniell* and *Herman* Complaints alleging that Emson shared consumers' private billing information with third parties.  Such conduct certainly—or at the very least, potentially—falls within the scope of the covered offense defined as the "[o]ral or written publication, in any manner, of material that violates a person's right of privacy."  As such, Primary Insurers can scarcely contend that the *Daniell* and *Herman* Complaints do not allege conduct by Emson that falls within the "personal and advertising injury" coverage of the Primary Policies.

Lest there be any doubt, the fact that the *Daniell* and *Herman* Complaints do not specifically plead an independent cause of action for Emson's alleged violation of consumers' right to privacy by disclosing their private billing information is inconsequential.  When evaluating whether a liability insurance policy covers a particular claim, courts look to "the

---

[3] "Ex. B" refers to the true and accurate copy of the *Herman* Complaint (First Amended Class Action Complaint), which is submitted as an exhibit to Emson's Statement of Facts on Motion for Summary Judgment.

factual allegations of the complaint, and not its legal characterizations of the underlying events [in order to] determine the availability of coverage." *Swan Consultants, Inc. v. Travelers Prop. Cas. Co.*, 360 F.Supp.2d 582, 588 (S.D.N.Y. 2005). It is not the form of the pleadings which determines coverage; it is the nature of the insured's conduct. *Hotel Des Artistes, Inc. v. Gen. Acc. Ins. Co. of Am.,* 9 A.D.3d 181, 192 (1st Dep't 2004). Thus, the *Daniell* and *Herman* Complaints need not state a claim for Emson's violation of consumers' right to privacy in order to fall within the ambit of the "personal and advertising injury" coverage of the Primary Policies.

In sum, the factual allegations of Emson's conduct as set forth in the *Daniell* and *Herman* Complaints at least *potentially* constitutes the covered offense of "[o]ral or written publication, in any manner, of material that violates a person's right of privacy." Accordingly, Primary Insurers cannot avoid their duty to defend Emson in the *Daniell* and *Herman* Suits based upon any imagined failure of the Complaints to sufficiently allege "personal and advertising injury."

**B.     The *Daniell* And *Herman* Complaints Allege "Personal And Advertising Injury" Caused By An Offense During The Primary Policy Periods.**

Primary Insurers also allege in Counts I and II of their Declaratory Judgment Complaint, that they do not owe a duty to defend Emson in the underlying *Daniell* and *Herman* Suits, because even if the *Daniell* and *Herman* Suits alleged "personal and advertising injury," any alleged "personal and advertising injury" was not caused by an "offense" during the policy periods of the Primary Policies. (Doc. #1, ¶ 29(e), ¶ 31(e)).

The *Daniell* and *Herman* Complaints each allege conduct by Emson that occurred during the policy periods of the Primary Policies. The five Primary Policies issued to Emson

by NFICH were in effect for the following policy periods: March 4, 2007 to March 4, 2008, March 4, 2008 to March 4, 2009, March 4, 2009 to March 4, 2010, March 4, 2010 to March 4, 2011, and March 4, 2012 to March 4, 2013.   The singular Primary Policy issued by VFI was in effect for the policy period from March 4, 2011 to March 4, 2012.   In total, the Primary Policies afforded continuous and uninterrupted general liability coverage (including "personal and advertising injury" coverage) from March 4, 2007 to March 4, 2013.

The timing of Bonnie Daniell's and Eric Herman's purchases from Emson and their receipt of telephone calls from Quality Resources establishes that Emson's alleged commission of the offense of "[o]ral or written publication, in any manner, of material that violates a person's right of privacy" occurred during the policy period of at least one of the Primary Policies.   As explained above, the complained-of conduct alleged in the *Daniell* and *Herman* Complaints is Emson's sharing of consumers' private billing information with third parties, *i.e.*, Quality Resources.   Since the *Daniell* and *Herman* Complaints allege that the Quality Resources representative was already in possession of their billing information when they received a telephone call from Quality Resources ostensibly to verify their prior purchase, Emson's alleged conduct in disclosing their private billing information necessarily occurred after their purchase from Emson and before they received the telephone call from Quality Resources.

In her Class Action Complaint, Bonnie Daniell alleged that she made her purchase from Emson on or around July 1, 2012, and received a telephone call regarding her purchase from Quality Resources on or around July 6, 2012.   (Ex. A, ¶¶ 52, 59).   Emson's alleged disclosure of Ms. Daniell's billing information therefore occurred between July 1, 2012 and July 6, 2012.

In his Class Action Complaint, Eric Herman alleged that he purchased a "Chair Gym" from Emson on or around April 25, 2012, and received a telephone call from Quality Resources to verify his order the very next day on April 26, 2012.  (Ex. B, ¶¶ 54, 58).  Emson's alleged disclosure of Mr. Herman's billing information therefore occurred between April 25, 2012, and April 26, 2012.  Thus, Emson's alleged conduct (and commission of the covered offense) as to both Ms. Daniell and Mr. Herman necessarily occurred during the policy period of March 4, 2012 to March 4, 2013, at which time the fifth and most recent Primary Policy issued by NFICH was in effect.  Therefore, the "personal and advertising injury" alleged in the *Daniell* and *Herman* Complaints was incontrovertibly caused by an offense during the policy period of at least one Primary Policy.

Additionally, Primary Insurers fail to acknowledge that the *Daniell* and *Herman* Suits are putative Class Actions.  In *Daniell*, Ms. Daniell seeks to assert her claims on behalf of the following class of persons: "All individuals in the United States from December 13, 2006 to the present who were telephonically enrolled by Quality Resources using the same script that was used to enroll Bonnie Daniel into Sempris's Budget Savers Membership Program following the individual's purchase of at least one Emson product from an Emson website." (Ex. A, ¶ 88).  Thus, if the *Daniell* Class is certified as proposed, Mishan could potentially be liable for Emson's disclosure of Plaintiffs' private billing information from December 13, 2006 to August 28, 2013, when the *Daniell* Complaint was filed.  Since the policy periods of the Primary Policies, which run continuously and uninterrupted from March 4, 2007 to March 4, 2013, encompass all but a fraction of the period defining the Class (December 13, 2006 to August 28, 2013), Primary Insurers cannot establish that Emson's commission of the covered

offense was not at least potentially within one or more of the policy periods. The Court should therefore reject Primary Insurers' allegation that any alleged "personal and advertising injury" was not caused by an offense during the policy periods of the Primary Policies.

## II.   NONE OF THE EXCLUSIONS APPLY TO RELIEVE PRIMARY INSURERS OF THEIR DUTY TO DEFEND MISHAN IN THE UNDERLYING ACTIONS.

While it is the insured's burden to establish coverage in the first instance, the burden then shifts to the insurer to prove the applicability of an exclusion from coverage. *Atl. Cas. Ins. Co. v. Value Waterproofing, Inc.*, 918 F.Supp.2d 243, 253 (S.D.N.Y. 2013). Where the insurer asserts a lack of coverage based on an exclusion, the insurer must demonstrate that the allegations of the complaint can be interpreted *only* to exclude coverage. *Bridge Metal Inds., L.L.C.*, 812 F.Supp.2d at 542. The insurer must establish that the allegations of the underlying complaint are *solely and entirely* within the policy exclusions and that the allegations, in *toto*, are subject to no other interpretation. *Ogden Corp. v. Travelers Indem. Co.*, 924 F.2d 39, 41 (2d Cir.1991). Thus, an insurer must demonstrate that the exclusion eliminates *all possibility of coverage*. *Frontier Insul. Contr. Inc. v. Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 175 (1997).

### A.   The "Violation of Statutes" Exclusion Does Not Apply to Relieve Primary Insurers of Their Duty to Defend.

In Counts I and II of their Declaratory Judgment Complaint, Primary Insurers also allege that the "Violation of Statutes" exclusion applies and, therefore, relieves them of their duty to defend Emson in the underlying actions. (Doc #1 at ¶ 88(i), 93(i)). The "Violation of Statutes" exclusion provides:

This Insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

    a.  The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

    b.  The CAN–SPAM Act of 2003, including any amendment of or addition to such law; or

    c.  Any statute, ordinance or regulation, other than the TCPA or CAN–SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

The "Violation of Statutes" exclusion does not preclude the potential of coverage for the allegations contained in the *Daniell* and *Herman* Complaints, and thus does not relieve Primary Insurers of their duty to defend Emson in the underlying actions. The *Daniell* complaint alleges claims against Emson for: Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFDBA") (Count I); Fraud by Omission (Count II); Breach of Contract (Count IV); and Unjust Enrichment (Count VI). (Ex. A). The *Herman* Complaint alleges claims against Emson for: Violation of the Michigan Consumer Protection Act ("MCPA") (Count I); Fraud by Omission (Count III); Breach of Contract (Count V); Unjust Enrichment (Count VII); and Violation of the Telephone Consumer Protection Act ("TCPA") (Count VIII). (Ex. B).

By its very terms, the "Violation of Statutes" exclusion does not preclude coverage for claims that are not based on statutory violations. The only statutory claim alleged in the *Daniell* Complaint is the ICFDBA cause of action; however, the ICFDBA is not one of the exclusion designated statutes nor, does "prohibit or limit the sending, transmitting... or

distribution of material ..." as specified therein. Thus, the "Violation of Statutes" exclusion does not apply to preclude coverage for the ICFDBA claim.   The remaining claims in the *Daniell* Complaint are common law claims, which do not involve a statutory violation. Therefore, none of the claims alleged in the *Daniell* Complaint are excluded from coverage under the "Violation of Statutes" exclusion.   *See, e.g., Axiom Insurance Managers, LLC v. Capital Specialty Ins. Corp.*, 876 F.Supp.2d 1005, 1015 (N.D. Ill. 2012) (ruling that violation of statute exclusion did not reach non-statutory claims*)*

While the *Herman* Complaint contains a count based upon the TCPA, the exclusion does not preclude coverage for any of the other claims alleged in *Herman* Complaint.   Other than the common law claims, which are necessarily beyond the reach of the "Violation of Statutes" exclusion, the *Herman* Complaint also alleges an MCPA claim, a statute which like the ICFDBA does not fall within the terms of the exclusion.   As the "Violation of Statutes" exclusion does not reach all of the claims, it does not provide a basis to relieve Primary Insurers of their duty to defend.   *See Monarch Ins. Co. v. Hetherly,* 560 N.Y.S.2d 745, 746 (1990) ("[t]he duty to defend is not affected simply because ... some [causes of action] are outside the coverage"); *Ogden Corp. v. Travelers Indem. Co.,* 924 F.2d 39, 41 (2d Cir.1991) (the insurer must establish that underlying complaint's allegations are *"solely and entirely"* within the policy exclusions).

**B.     The "Violation of Law" Exclusion Does Not Apply to Relieve Primary Insurers of Their Duty to Defend.**

Primary Insurers also allege that the "Violation of Law" exclusion applies and, therefore, relieves them of their duty to defend Emson in the underlying actions.   The "Violation of Law" exclusion provides as follows:

"**2.    Exclusions**

This Insurance does not apply to:

**p.    Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury' arising directly or indirectly out of an action or omission that violates or is alleged to violate:

(1)    The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2)    The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3)    The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

(4)    Any federal, state, or local statute, ordinance, or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses or prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information."

(*See e.g.*, Doc. #1-6, p. 23).

Here, as previously addressed in the preceding section, the claims alleged in the *Daniell* and *Herman* Complaints are not purely statutory-based claims.  Rather, the Complaints allege common law claims, including Fraud by Omission, Breach of Contract, and Unjust Enrichment.  The "Violation of Law" exclusion does not apply for the same reasons that the "Violation of Statutes" exclusion does not apply.

14

C.    The "Knowing Violation of Rights of Another" Exclusion Does Not Apply
to Relieve Primary Insurers of Their Duty to Defend.

Primary Insurers also contend that they have no duty to defend by virtue of the

"Knowing Violation of Rights of Another" exclusion, which provides:

This Insurance does not apply to:

**Knowing Violation of Rights of Another**

"Personal and advertising injury" caused by or at the direction of the
insured with the knowledge that the act would violate the rights of
another and would inflict "personal and advertising injury."

Instructive on the application of the "Knowing Violation of Rights of Another"

exclusion is *Bridge Metal Industries, L.L.C. v. Travelers Indemnity Co.*, 812 F. Supp. 2d 527,

545 (S.D.N.Y. 2011).   There, the insured sought coverage for Lanham Act claims brought

against it in connection with an advertising injury.   The court found that although the

underlying complaint alleged intentional conduct, the Lanham Act claims asserted by the third-

party plaintiffs allowed recovery even without proof of intentional conduct and therefore the

insurer had a duty to defend. *Id*. at 544–45.   The court found support in New York cases for

the proposition that where the third-party plaintiff asserts claims that allow him to recover

without proving intentional conduct, the insurer has a duty to defend regardless of allegations

of intentional conduct in the complaint.   *Id; see also CGS Industries v. Charter Oak Fire

Insurance Co.,* 720 F.3d 71, 83 (2d Cir. 2013) (despite "boilerplate allegations of willful

misconduct," court ruled exclusion did not apply as Lanham Act does not require proof of

intent).   The court's conclusion is consistent with the principle that the duty to defend will arise

if there are any allegations in the complaint, no matter how frivolous, that suggest a possibility

of coverage unless the insurer demonstrates that the allegations unequivocally demonstrate that coverage is excluded. *Bridge Metal Indus.*, 812 F.Supp.2d at 545.

Here, the *Daniell* and *Herman* Complaints contain statutory claims which do not require intent to injure. For instance, the ICFDBA claim in the *Daniell* Complaint and the MCPA claim in the *Herman* Complaint each allow recovery for negligent, as well as intentional conduct. *See, e.g., Barrett v. Brian Bemis Auto World,* 408 F.Supp.2d 539, 544 (N.D. IL 2005) ("ICFA does not require a scienter showing..."); *Games on Ventures, Inc. v. General R.V. Center, Inc.,* 587 F.Supp.2d 831, 839 (E.D. MI 2008) (MCPA broader than common law tort of fraud as it also precludes unfair business practices).

Moreover, both Complaints include allegations which do not impart intentional acts. For instance, the *Daniell* Complaint as to Plaintiff Bonnie Daniell alleges that Emson "did not clearly disclose that it would be sharing her information", that Emson "failed to disclose that it would share her information", and that Emson's "failure to disclose its information sharing policies" caused her to submit the confidential information. (Ex. A, ¶¶ 54-55). Similarly, the *Herman* Complaint pleads that Emson did not "clearly disclose that it would be sharing his [Herman's] information with any third party" and alleges that Emson violated the MCPA by "failing to reveal a material..." (Ex. B, ¶¶ 56, 100). None of these averments give rise to conduct which would support knowledge that the act would inflict injury as required by the terms of the exclusion. The "Knowing Violation of Rights of Another" exclusion does not apply.

**D.   The "'Breach of Contract" Exclusion Does Not Apply to Relieve Primary Insurers of Their Duty to Defend.**

Primary Insurers also allege that the "Breach of Contract" exclusion applies to relieve them of any duty to defend.  The exclusion provides as follows:

This Insurance does not apply to:

**Breach Of Contract**
"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement."

Under New York law, an exclusion for an injury arising out of a breach of contract is governed by a "but for" test.  *Bridge Metal Indus., L.L.C. v. Travelers Indem. Co.*, 812 F. Supp. 2d 527, 543 (S.D.N.Y. 2011), *citing Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 623 n. 15 (2d Cir. 2001).  Only if the injury would not exist *but for* the breach of contract, would the injury 'arise out of a breach of contract.'"  *Id.* (emphasis in original).

Primary Insurers cannot show that the claims in the *Daniell* and *Herman* Complaints are "*solely and entirely*" within the "Breach of Contract" exclusion of the Primary Policies. *See Advance Watch Co. v. Travelers Property Casualty Co. of America*, No. 10–CV–3305, 2011 WL 446271 (S.D.N.Y. 2011) (breach of contract exclusion barred coverage entirely because the underlying complaint contained *only* a breach of contract claim).

Here, as previously described, both Complaints include a number of claims which are not based on breach of contract and hence, not subject to the exclusion.  One example of a cause of action in the *Daniell* and *Herman* Complaints that is wholly independent, and thus does not arise from any alleged breach of contract, is the claim for Fraud by Omission.  The allegations supporting the Fraud by Omission claims in the *Daniell* and *Herman* Complaints

17

focus on Emson's concealment, and failure to disclose to consumers, its sharing of their private billing information. The Complaints allege that "Emson's concealment and omission of these material facts contributed to Plaintiff and the Class members' confusion regarding the source and sponsorship behind the telemarketing calls they received...which led to Plaintiff and the Class members' being deceptively enrolled in and charged for Sempris Membership Programs." (Ex. A, ¶ 125; Ex. B, ¶ 124).   This is the resultant injury of Emson's alleged fraud by omission, and it *would* exist *but for* and independent of any breach of contract. Accordingly, the "Breach of Contract" exclusion does not apply to the Fraud by Omission claims in the *Daniell* and *Herman* Complaints and, therefore, requires Primary Insurers to defend Emson in the entire actions. *See Bridge Metal Indus.*, 812 F. Supp. 2d at 543; *Hugo Boss,* 252 F.3d at 623 n. 15.

## III.   THE PRIMARY POLICIES AFFORD COVERAGE FOR "DAMAGES" SOUGHT IN THE *DANIELL* AND *HERMAN* SUITS.

As a final attempt to avoid their obligation to defend Emson in the underlying actions, Primary Insurers assert that "[c]laims for injunctive relief, equitable relief including restitution and statutory fines, including exemplary penalties do not seek 'damages' as the term is used in the Primary Policies." (Doc #1, at ¶¶ 30(m), 32(m)).   While the *Daniell* Complaint seeks such categories of damages, it additionally seeks "economic, monetary, actual, consequential, statutory, and compensatory damages," and "such other and further relief as equity and justice may require." (Ex. A, pp. 42, 43). The *Herman* Complaint also seeks "economic, monetary, actual, consequential, statutory and compensatory damages," and "such other and further relief as equity and justice may require." (Ex. B, p. 46).

In *Sokolowski on Behalf of M.M. & P. Pension Plan v. Aetna Life & Cas. Co.*, 670 F.Supp. 1199 (S.D.N.Y. 1987), the insurer asserted that it had no duty to defend its insured in the underlying suit because the underlying complaint alleged punitive or exemplary damages, which were specifically excluded from coverage under the policy.  In rejecting the insurer's argument, this Court stated: "[o]bviously, [the insurer] cannot avoid its duty to defend by asserting that the [underlying] complaint seeks only punitive damages against the individual trustees, when the complaint explicitly seeks compensatory relief as well."  *Id*. at 1206 (emphasis added).  Here, just as *Sokolowski*, the *Daniell* and *Herman* Complaints seek "damages" as the term is used in the Primary Policies, *i.e.*, "economic, monetary, actual, consequential, statutory and compensatory damages."  The fact that the Complaints may seek relief which may not be covered does not bar a duty to defend where covered damages are also sought.

## IV. THE PRIMARY INSURERS' DUTY TO INDEMNIFY IS NOT YET RIPE, AND CANNOT BE ADJUDICATED UNTIL THE UNDERLYING *DANIELL* AND *HERMAN* SUITS ARE RESOLVED.

In Counts III and IV of their Complaint for Declaratory Judgment, Primary Insurers allege that they do not owe a duty to indemnify Emson in the underlying *Daniell* and *Herman* suits for the very same reasons they have alleged with respect to the duty to defend.  (Doc. #1, ¶ 98(c), (e), (i), (j), (k), (m), ¶103(c), (e), (i), (j), (k), (m)).

Under New York law, an action to declare the insurer's duty to indemnify is premature where the issues of indemnification and coverage hinge on facts which will necessarily be decided in the underlying action.  *Hout v. Coffman*, 126 A.D.2d 973, 973, 511 N.Y.S.2d 990 (4th Dep't 1987).  Until the underlying action is concluded, dismissal of an insurer's

declaratory judgment action for indemnity is appropriate.  *See Village of Sylvan Beach, N.Y. v. Travelers Indem. Co.,* 55 F.3d 114, 115–16 (2d Cir.1995); *see also Specialty Nat. Ins. Co.,* 606 F.Supp. 2d at 472 (dismissing without prejudice the portion of the insurer's declaratory judgment action seeking declaration that it had no duty to indemnify insured in underlying action where no determination of liability had yet been reached in the underlying litigation).

Here, while Primary Insurers seek a judicial declaration that they have no duty to indemnify Emson in the underlying *Daniell* and *Herman* suits, the above authorities make clear that the duty to indemnify is not yet ripe to be decided until the underlying actions have been resolved.   Accordingly, the Court should dismiss without prejudice Counts III and IV of Primary Insurers' Complaint for Declaratory Judgment.

## V.   THE GROUNDS RAISED AS TO THE PRIMARY POLICIES ARE ALSO APPLICABLE TO THE UMBRELLA POLICIES.

Counts V through VIII of the Complaint for Declaratory Judgment seek declarations that Transportation Insurance Company does not owe a duty to defend or indemnify Emson under the Umbrella Policies.  The grounds raised are essentially the same as pled with respect to the Primary Policies and, as such, the points raised herein are equally applicable to the Umbrella Policies.  Alternatively, as the Primary policies apply such that a defense must be provided to Emson, any question of the application of the Umbrella Policies is premature.

## CONCLUSION

WHEREFORE, Defendant, E. Mishan & Sons, Inc. respectfully requests that the Court enter an order granting summary judgment in its favor and against Plaintiffs, National Fire Insurance Company of Hartford, Valley Forge Insurance Company finding that they must provide a defense to Emson in the underlying *Daniell* and *Herman* Suits.

Respectfully submitted,

**E. MISHAN & SONS, INC.**

By: _____

One of Its Attorneys

Howard B. Randell
Patti M. Deuel
Adam L. Frankel
LEAHY, EISENBERG & FRAENKEL, LTD.
33 West Monroe Street, Suite 1100
Chicago, Illinois 60603
Tel. (312) 368-4554

*Counsel for E. Mishan & Sons, Inc.*

\\lefpl\Prolaw Files\Documents\E. MISHAN & SONS, INC\15384\PLEADING\119941.docx
MEMORANDUM FOR MSJ