UNITED STATES DISCTIRCT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL FIRE INSURANCE COMPANY<br>OF HARTFORD, VALLEY FORGE<br>INSURANCE COMPANY,<br><br>    Plaintiffs,<br><br>v.<br><br>E. MISHAN & SONS, INC.,<br>a New York corporation<br>d/b/a EMSON, INC.<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No: 13-CIV-5774-TPG<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### DEFENDANT, E. MISHAN & SONS, INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PRIMARY INSURERS CROSS MOTION FOR SUMMARY JUDGMENT

NOW COMES Defendant, E. Mishan & Sons, Inc. d/b/a Emson, Inc. ("Emson"), by and through its counsel, LEAHY, EISENBERG & FRAENKEL, LTD, and for its Reply Memorandum at Law in Support of its Motion for Summary Judgment and in Opposition to Primary Insurers' Cross Motion for Summary Judgment, states as follows:

I. **THE *DANIELL* AND *HERMAN* COMPLAINTS ALLEGE THAT EMSON IMPROPERLY DISCLOSED CONSUMERS' PRIVATE INFORMATION TO THIRD-PARTIES, THEREBY TRIGGERING INSURERS' DUTY TO DEFEND.**

  A. The Underlying Complaints Need Not State a Cause of Action for an "Invasion of Privacy" Tort Recognized Under Illinois and Michigan Law.

The Court should reject out of hand Insurers' central challenge to Emson's position—that the Underlying Complaints triggered the duty to defend—because Insurers' argument is based on a fundamental misunderstanding of the *proper* method by which a court determines

1

whether the duty to defend has been triggered by an underlying suit against the insured.[1] (Doc. #24, pp. 3-9).[2] Emson previously explained that the *Daniell* and *Herman* Complaints are replete with allegations describing conduct by Emson that qualifies as the covered offense defined as **"*oral or written publication of material that violates a person's right of privacy.*"** (*See* Doc. #16, pp. 4-8). Insurers do not and cannot deny that the Underlying Complaints charge Emson with the improper sharing of the claimants' "private billing, contact, and order information with disreputable third parties..." (Doc. #23-2, ¶ 10). Instead, Insurers assert that the Underlying Complaints do not trigger the duty to defend, because they fail to adequately state a cause of action (or common law elements) for an "invasion of privacy" tort cognizable under Illinois and Michigan law, respectively. (Doc #24, pp. 4-9). By advocating this incorrect approach, Insurers are essentially asking the Court to assess the Underlying Complaints under the standards applicable to a Rule 12(b)(6) motion to dismiss for failure to state a claim. However, as the Court is well aware, the viability of a cause of action is meaningless to the question of an Insurers' duty to defend. *See Ruder & Finn v. Seaboard Sur. Co.*, 52 N.Y.2d 663, 670 (1981) (for the duty to defend, "[t]he question is not whether the complaint can withstand a motion to dismiss for failure to state a cause of action").

Rather, under the correct approach, "[t]he duty to defend is triggered whenever the allegations in the complaint fall within the risk covered by the policy." *Suwannee Am. Cement LLC v. Zurich Ins. Co., Ltd.*, 885 F.Supp.2d 611, 614 (S.D.N.Y. 2012). To make this ruling, courts look to "the factual allegations of the complaint and not its legal characterizations of the underlying events." *Swan Consults., Inc. v. Travelers Prop. Cas. Co.*, 360 F.Supp.2d 582,

---

[1] "Insurers" herein refers to "Primary Insurers," as used in Emson's previously filed summary-judgment papers.
[2] The page numbers cited from Insurers' Memorandum of Law (Doc. #24) refer to those at the bottom of the page, as opposed those file-stamped in the header, to maintain consistence with Insurers' Table of Contents.

588 (S.D.N.Y. 2005). Accordingly, "[i]t is not the form of the pleadings which determines coverage...it is the nature of the insured's conduct." *Hotel des Artistes, Inc. v. Gen. Acc. Ins. Co. of Am.*, 9 A.D.3d 181, 192 (2004); *see also*, *Ruder & Finn*, 52 N.Y.2d at 670 ("[a] policy protects against poorly or incompletely pleaded cases as well as those artfully drafted").

Insurers unbelievably claim that it is the *Primary Policies* themselves which require that the Underlying Complaints state a cause of action (or common law elements) for an "invasion of privacy" tort cognizable under state law to trigger the duty to defend. (Doc #24, p.4). Conspicuously, however, no such requirement can be found in the Policies—which, of course, explains why Insurers cannot identify any part of the Policies imposing this requirement. Insurers' interpretation of the Policies is not only unsupported, it is, in fact, contradicted by the *actual* terms of the Policies. *See Hotel des Artistes*, 9 A.D.3d at 188 (in an analogous context stating, "[t]he obvious flaw in [the insurer's] argument is that its interpretation of the policy conflicts with the plain meaning of the actual policy terms").

The **Insuring Agreement** and **Definitions** in the "Advertising and Personal Injury Liability" coverage in the Primary Policies set forth the *actual* terms pertaining to triggering Insurers' duty to defend. These two sections provide in pertinent part as follows:

**COVERAGE B   PERSONAL AND ADVERTISING INJURY LIABILITY**

    1.    **Insuring Agreement**

        a.    We will pay those sums that the insured becomes legally obligated to pay as ***damages because of "personal and advertising injury"*** to which this insurance applies. We will have the right and ***duty to defend the insured against any "suit" seeking those damages...***

                \*      \*      \*

        b.    This insurance applies to "personal and advertising injury" ***caused by an offense*** arising out of your business...

*       *       *

SECTION V - DEFINITIONS

14.  "Personal and advertising injury" means injury...*arising out of one or more of the following offenses*:

*       *       *

  e. *Oral or written publication, in any manner, of material that violates a person's right of privacy;*"

(Doc # 1-1, pp. 13-14) (emphasis added).

Pursuant to the terms above, Insurers' duty to defend is triggered when a suit alleges an injury arising out of the insured's commission of a covered offense. *See, e.g., A. Meyers & Sons Corp. v. Zurich Am. Ins. Grp.*, 74 N.Y.2d 298, 303 (1989) ("to trigger [the] duty to defend, the claimed injury must...constitute one of the enumerated offenses"). Here, this means that since the *Daniell* and *Herman* Complaints allege conduct by Emson that at least "*arguably*" qualifies as the "*oral or written publication of material, in any manner, that violates a person's right of privacy*," Insurers have a duty to defend. *See Nat'l Cas. Co. v. Vigilant Ins. Co.*, 466 F.Supp.2d 533, 538 (S.D.N.Y. 2006) ("[i]f any of the claims...arguably arise from covered events, the insurer is required to defend"). It certainly *does not* mean that the Underlying Complaints must state a cause of action for an "invasion of privacy" tort recognized under Illinois and Michigan law.

Insurers nevertheless contend that "coverage gives rise to a duty to defend an invasion of privacy offense <u>only</u> if the underlying complaint pleads all the common law elements of an invasion of privacy cause of action," misplacing their reliance on *Whole Enchilada, Inc. v. Travelers Property Casualty Co.*, 581 F.Supp.2d 677 (W.D. Pa. 2008). (Doc. #24, pp.4-5). However, this is not only distinguishable, it actually supports Emson. The court there even stated that "personal injury coverage under a commercial liability policy *is not limited to the*

*common law tort meaning* of a policy's language," which is the antithesis of Insurers' position here. *Id.* at 695 (emphasis added). Further, Insurers' assertion that "the court found no duty to defend on grounds that the underlying complaint...failed to allege the common law elements of an invasion of privacy action," is a fiction. Rather, the court held there was no duty to defend based on its finding that "the [underlying] Complaint does not allege publication that gives unreasonable publicity to a person's private life." *Id.* at 699. No such allegations existed because the credit card information at issue "was printed on a receipt that was handed back" to the very cardholders who provided the information in the first place. *Id.* at 699-700. Thus, Insurers' considerable reliance on *Whole Enchilada* is confounding.

Insurers' reliance on *Folgelstrom v. Lamps Plus, Inc.,* 195 Cal.App.4th 986, 989 (2011), fares no better. (Doc. #24, p. 5). There, plaintiff alleged that Lamps Plus requested zip codes from its customers during credit card transactions in order to obtain their home addresses to mail them marketing materials. On appeal, the court determined that under the relevant case law, it would not "recognize a privacy interest....to not receive unsolicited mailings from a retail business," and concluded that "the conduct...does not constitute a 'serious' invasion of privacy." *Id.* at 991-92. The case was not an insurance dispute, the court did not address an insurer's duty to defend, and the ruling in no way stands for the proposition that the *Daniell* and *Herman* Complaints must allege an "invasion of privacy" tort to trigger Insurers' duty to defend.

      **B.**    **The Underlying Complaints Allege the "Oral or Written Publication of Material, in Any Manner, That Violates a Person's Right of Privacy."**

Although Insurers concede, as they must, that the *Daniell* and *Herman* Complaints allege "that [Emson] provided the consumers' billing information to Co-Defendant, Quality

Resources," (Doc. #24, p. 10), they maintain that the Complaints fail to allege conduct by Emson qualifying as the covered offense at issue. In support, Insurers cherry-pick a singular allegation from the Underlying Complaints which, they contend, "describe[s] the gravamen of [Emson's] actions." (Doc #24, p. 4). The allegation selected by Insurers provides:

> "Using the sale of a legitimate product the consumer actually desires as bait, Defendants acquire consumers' billing information and then trick consumers into enrolling and paying for memberships..."

(Doc #24, p. 4, *quoting* Doc. #18-1, ¶ 1; Doc. #18-2, ¶ 1).

Based on this sole allegation, Insurers argue that "[Emson's] alleged 'bait and switch' or consumer fraud is not an enumerated 'personal and advertising injury' offense. As such it is not covered...by the Policies." (Doc #24, p.4). In other words, according to Insurers, the mere presence of allegations, such as the one above, entirely negates the multitude of other allegations that allege Emson's disclosure of consumers' private information to third parties. Insurers' seemingly fail to realize that if some, but not all of the allegations might fall within the policy coverage, then the insurer's duty to defend extends to the entire case. *Ruder & Finn*, 52 N.Y.2d at 669-70. Further, "if the underlying complaint alleges *any facts or grounds* which bring the action within the protection purchased," the duty to defend is triggered. *IBM Corp. v. Liberty Mut. Fire Ins. Co.*, 303 F.3d 419, 424 (2d Cir. 2002) (emphasis added).

As Emson illustrated in its initial Memorandum, the Underlying Complaints contain a litany of allegations specifically alleging that Emson disclosed consumers' private information to third parties, such as Quality Resources and/or Sempris. (Doc. #18, ¶¶ 10, 16). For example, the *Daniell* Complaint contains the following typical allegation:

> "...the consumer provides his/her *private* billing and contact information. However, rather than protect the *sensitive*

6

> *information* shared by the consumer (as any consumer would reasonably believe), Emson *transfers this information to its business partner*—Quality Resources—who then uses it to initiate unsolicited telephone calls..."

(Doc. #18, ¶ 10, *quoting* Doc. #18-1, ¶ 3) (emphasis added).

Likewise, the *Herman* Complaint contains the following typical allegation:

> "After the online transaction is completed (and unbeknownst to the consumer), Emson *transfers the consumer's private contact, billing, and order information to its business partner*, Defendant Quality Resources, a third party telemarketer...;"

(Doc. #18, ¶ 16, *quoting* Doc. #18-2, ¶ 2) (emphasis added).

Given the above allegations, Insurers cannot realistically maintain that the *Daniell* and *Herman* Complaints fail to allege conduct by Emson that *arguably* qualifies as the "*oral or written publication, in any manner, of material that violates a person's right of privacy.*" This is especially so, given that "[a]ny doubt as to whether the allegations state a claim covered by the policy must be resolved in favor of the insured and against the insurer." *Avondale Indus., Inc. v. Travelers Indem. Co.*, 697 F.Supp. 1314, 1316 (S.D.N.Y. 1988).

As a final point, while Insurers do not dispute that New York law governs this declaratory judgment action (*see* Doc. #24, pp. 3, 9, 10, 12, 18, 19, 21-23, 25), they assert—without legal support—that "Illinois law governs whether the [*Daniell*] complaint alleges an invasion of privacy offense," and that "Michigan law applies to causes of action asserted in the [*Herman*] suit."[3] (Doc. #24, pp. 5, 7). These assertions are inconsequential, because even under the law of these respective states, Insurers' duty to defend was triggered.

Under both Illinois and Michigan law, the duty to defend is triggered if the complaint

---

[3] Unsurprisingly, Emson has uncovered no cases in which this Court or any other court has applied the law of the forum state to the issue of the duty to defend, *and also* applied the law of the state where the underlying complaint was filed to assess the underlying allegations.

7

alleges *conduct* that *arguably* falls within the policy's coverage, regardless of its legal characterizations. *See e.g., Steadfast Ins. Co. v. Caremark Rx, Inc.*, 359 Ill.App.3d 749, 755-56 (2005) ("the alleged conduct, and not the labeling of the claim...is controlling"); *Auto-Owners Ins. Co. v. Redland Ins. Co.*, 522 F.Supp.2d 891, 899 (W.D. Mich. 2007) (complaint need only allege "conduct that could arguably be covered by its policy"). In fact, the law of both states recognizes a cognizable "invasion of privacy" offense for disclosing private information to a third party. *See Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 223 Ill.2d 352, 369 (2006) (discussing "advertising injury" "that stems from the disclosure of private information" to third parties); *Mullin v. Detroit Police Dep't*, 133 Mich.App. 46, 51 (1984) (disclosure of names, addresses, telephone numbers, birth dates, etc. of persons involved in automobile accidents in Detroit during year of 1980 constitutes "invasion of privacy").

In short, the entirety of the Insurers' argument is based on what the Underlying Complaints do not plead as opposed to what is actually alleged. The Insurers' Memorandum barely references any allegations of the underlying Complaints. This omission is telling. This is a duty to defend case. The Insurers' defense obligation is based on the allegations of the Complaints. Even if the pleadings do not include every element of a cause of action for a privacy claim, the allegations undisputedly involve injury arising out of a publication of material that violates a person's right of privacy as specified by the terms of the contracts of insurance. The Insurers owe a duty to defend.

    C.    **The Underlying Complaints Allege Conduct that Includes the "*Publication*" of "*Material that Violates*" a Person's Right To Privacy.**

Insurers incorrectly contend that the Underlying Complaints do not allege "publication," arguing that the term requires the distribution of private material to the "public

at large." (Doc. #24, pp. 9-10). Under New York law, "publication" requires only the disclosure of private information to a third party. *See Fedrizzi v. Washingtonville Cent. Sch. Dist.*, 611 N.Y.S.2d 584, 585 (1994) ("publication" requires only "some communication to a third person").[4] The same is true under Illinois and Michigan law. *See, e.g., Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 359 Ill.App.3d 872, 885 (2006) (publication of material that violates person's right of privacy includes the publication of material that wrongfully discloses private facts to third parties); *Wilson v. Sparrow Health Sys.*, 290 Mich.App. 149, 154 (2010) (plaintiff must show...the defendant made "an unprivileged publication to a third party); *Reynolds v. Ferguson*, 73 F.Supp.2d 841, 846 (W.D. Mich. 1999) (same).[5]

Insurers' find support for their claim that "publication" requires dissemination to the "public at large" in two cases involving claims for violations of the FACTA. (Doc. #24, pp. 9-10). These cases, however, are inapposite. There, the courts had to decide whether "publication," as used in the policies, included a merchant issuing a credit card receipt to a customer that contained more than five digits of the customer's credit card number or the card's expiration date. In contrast here, the underlying Complaints expressly plead the transmission of the private billing information to third parties. (Doc. #18-1, ¶¶ 3, 32, 33, 104, 115, 123; Doc. #18-2, ¶¶ 2, 3, 16, 34, 101).

Insurers next contend that even if the *"publication"* element is satisfied, the Underlying Complaints still do not allege *"material that violates"* a person's right of privacy, relying on

---

[4] *See also, Rossignol v. Silvernail*, 536 N.Y.S.2d 906, 907 (1989); *Church of Scientology Int'l v. Eli Lilly & Co.*, 778 F.Supp. 661, 666 (S.D.N.Y. 1991); *Penn Warranty Corp. v. DiGiovanni*, 810 N.Y.S.2d 807, 814 (2005).

[5] The cited cases decided under New York, Illinois, and Michigan law define "publication" in the context of libel, slander and defamation. Given that the enumerated covered offense immediately preceding the covered offense at issue is defined as "d. Oral or written publication, in any manner, of material that slanders or libels a person...or disparages a person's...goods, products or services," the definition of "publication" in these contexts is equally applicable to the meaning of "publication" in the covered offense at issue.

cases decided under California and Pennsylvania law. (Doc. #24, pp. 10-12). Again, Insurers' improperly fault the *Daniell* and *Herman* Complaints for failing to allege an "invasion of privacy" cause of action, and attempt to distinguish the Second Circuit cases previously cited by Emson for the proposition that a right to privacy exists with respect to personal financial information. (Doc. #18, pp. 5-6).

As explained above, Insurers' approach is misguided. The relevant inquiry is whether the *Daniell* and *Herman* Complaints allege conduct by Emson that qualifies as the covered offense at issue. The Underlying Complaints repeatedly refer to Emson's disclosure of consumers' "private" personal financial information, unbeknownst to the consumers and against their wishes. New York law recognizes a person's right to privacy and confidentiality in personal financial information. Thus, it only follows that the Underlying Complaints allege Emson disclosed "*material that violates a person's right of privacy.*" To *accept* Insurers' argument is to *reject* the duty-to-defend pleading standards which require that coverage be construed broadly and any doubts or ambiguities be resolved in favor of the insured.

II.   **NONE OF THE EXCLUSIONS APPLY TO RELIEVE INSURERS OF THEIR DUTY TO DEFEND EMSON IN THE UNDERLYING ACTIONS.**

   A.   **The "Violation of Statutes/Laws" Exclusions Do Not Apply to Relieve Insurers of Their Duty to Defend.**

Insurers' alternatively argue that the "Violation of Statutes/Law" Exclusions preclude coverage *not only* for any claims alleging Emson's violation of a statute or law that prohibits the sending of information (*i.e.*, TCPA claim), *but also* for "remaining Counts which arise out of [Emson's] alleged statutory violation," including (1) claims "for alleged violations of consumer protection [statutes] and other statutes which are not enumerated in the Exclusion itself," and (2) "common law" claims. (Doc. #24, pp. 13, 14). With respect to the former,

10

Insurers contend that the Underlying claims for violations of "the ICFA (*Daniell*)" and "the MCPA (*Herman*)" are excluded by the "Violations of Statutes/Law" Exclusion because these two statutes, like the enumerated statutes, "prohibit[] or limit[] the sending, transmitting, communicating or distribution of material or information." (Doc. #24, p. 13, 16). With respect to the latter ("fraud by omission," "breach of contract," and "unjust enrichment" clims), Insurers contend that these common law claims are also barred by the Exclusion, as they supposedly "arise out of" the alleged ICFA and MCPA violations. (Doc. #24, 18-20).

While the "Violations of Statutes/Law" Exclusion may well preclude coverage for the TCPA claim (*Herman*), it certainly does not bar coverage for the ICFA and MCPA claims. Unlike the Exclusion's enumerated statutes (*i.e.*, TCPA, CAN-SPAM Act, FCRA, and FACTA), these consumer fraud statutes are not aimed at prohibiting or limiting the sending, transmitting, communicating or distribution of information. Simply because such conduct may fall within the parameters of the ICFA and MCPA, these consumer fraud statutes are not transformed into the type of statute specified in the Exclusion. Notably, such a construction of the Exclusions would violate the black letter law that exclusions are narrowly construed. *See e.g., Georgetown Cap. Grp., Inc. v. Everest Nat'l Ins. Co.*, 961 N.Y.S.2d 622, 624 (2013). This rule of construction has been applied to exclusions, like the "Violations of Statutes/Law" Exclusions, which utilize the language "arising out of." *See, e.g., Schlather, Stumbar, Parks & Salk, LLP v. One Beacon Ins. Co.*, 2011 WL 6756971 (N.D.N.Y. 2011) (while "New York law defines that term as 'originating from, incident to...," it must be "interpreted as narrowly as possible in an insurance exclusion..."); *Gluck v. Executive Risk Indem., Inc.*, 680 F.Supp.2d 406, 419 (E.D.N.Y. 2010) (same); *see also, Purdue Frederick Co. v. Steadfast Ins. Co.*, 801

N.Y.S.2d 781, *7 (2005) (courts that construe the phrase broadly "take[] the definition of 'arising out of' too far").

Utilizing a broad sweep, Insurers maintain that the "Violation of Statutes/Law" Exclusions apply to all claims including the common law claims. (Doc. #24, pp. 18-20). In support, Insurers rely on a number of unreported decisions. Insurers' proffered approach, however, does not comport with the very terms of the Exclusions, which limit the scope of their application to underlying claims alleging violations of *statutes*. The "Violation of Statutes/Law" Exclusion provides:

> This Insurance does not apply to:
>
> **Recording And Distribution Of Material Or Information In Violation Of Law**
>
> "Personal and advertising injury' arising directly or indirectly out of an action or omission that violates or is alleged to violate:
>
> (1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or
>
> (2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;
>
> (3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or
>
> (4) Any federal, state, or local statute, ordinance, or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses or prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

(Doc. #1-6, p.23).

There is nothing in the "Violation of Statutes/Law" Exclusion that supports an interpretation that the Exclusion operates to bar coverage for any *non*-statutory claims. *See, e.g., Axiom Insurance Managers, LLC v. Capital Specialty Ins. Corp.*, 876 F.Supp.2d 1005, 1015 (N.D. Ill. 2012) (ruling that violation of statute exclusion did not reach non-statutory claims); *Nationwide Mutual Insurance Co. v. Harris Medical Associates, LLC*, 2013 WL 5341498 (E.D. Mo. 2013) (same). Thus, Insurers' argument that the Exclusion applies to bar all coverage has no merit.

### B. The "Knowing Violation" and "Knowledge of Falsity" Exclusions Do Not Apply to Relieve Insurers of Their Duty to Defend.

Insurers further contend that the "Knowing Violation" Exclusion precludes coverage for the ICFA (*Daniell*) and MCPA (*Herman*) claims. (Doc. #24, p. 20-22). Insurers, however, do not even attempt to challenge Emson's supporting cases, which hold that the Exclusion does not apply if the insured can possibly be found liable without proof of intentional conduct, or address the point that because Emson can be found to have violated the ICFA and MCPA without having done so knowingly or intentionally, the Exclusion does not apply. (*See* Doc. #16, p. 15);[6] *see also GRE Ins. Grp. v. GMA Accessories, Inc.*, 691 N.Y.S.2d 244, 248 (1998) ("[s]ince it is possible that [the insured] may be found liable for copyright infringement in the [underlying] [a]ction without being found to have acted willfully and knowingly, [the insurer] cannot establish that [the] infringement claim against [the insured] falls "solely and entirely" within either…of the exclusions cited").

Instead, Insurers simply state that "[c]ourts applying New York law have found the 'Knowing Violation' Exclusion to preclude 'personal and advertising injury' [coverage] when

---

[6] In support of its position that the "Knowing Violation" Exclusion does not apply to bar coverage, Emson discussed *Bridge Metal Indus., L.L.C. v. Travelers Indem. Co.*, 812 F.Supp.2d 527, 544-45 (S.D.N.Y. 2011) and additionally cited *CGS Indus. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71, 83 (2d Cir. 2013).

13

the underlying complaint alleges the insured engaged in intentional conduct." (Doc. #24, p. 21). Insurers therefore contend that the Exclusion applies where the underlying complaint merely contains an allegation of knowing/intentional conduct. In actuality, any exclusion with a "knowledge" element applies only if *each and every underlying allegation* alleges "knowing" or "intentional" conduct by the insured. *See, e.g., Federal Ins. Co. v. Cablevision Sys. Dvpmt. Co.*, 637 F.Supp.1568, 1580 (E.D.N.Y. 1986), ("the complaint must be scrutinized to ascertain whether knowledge...was alleged in *all instances*") (emphasis added).

Even in the cases mistakenly relied on by Insurers, the Exclusion was held to apply only because *all* underlying allegations alleged knowing/intentional conduct. *See Int'l Chem. Corp. v. Nautilus Ins. Co.*, 2012 WL 32963 (W.D.N.Y. 2012) ("[i]n short, *every allegation* against [the insured] accuses it of knowing and intentional conduct"); *Atl. Mut. Ins. Co. v. Terk Technologies Corp.*, 763 N.Y.S.2d 56 (2003) ("[s]ince *all of the factual allegations*...are premised on intentional, 'knowing' conduct, they fall squarely within the...exclusion") (all emphasis added). In this case, however, the Underlying Complaints are rife with allegations that *do not* allege any knowing/intentional conduct by Emson, thereby rendering the Exclusion inapplicable. (*See* Doc. # 16, p. 16). And, while Insurers also encourage the Court to *infer* knowing/intentional conduct where it is not alleged, this practice has been held to be improper. *Cablevision Sys.*, 637 F.Supp. at 1581 ("[n]or can the Court accept [insurer's] contention that [the insured's] knowledge...is necessarily inferred from other allegations...")

In a concomitant argument, Insurers puzzlingly contend that coverage for the ICFA and MCPA claims is also barred by the "Knowledge of Falsity" Exclusion, which pertains to the insured's "oral or written publication of material...with knowledge of its falsity." (Doc. #24, p. 20-22). Obviously, however, Emson's disclosure of consumers' private billing information

to third parties is not alleged to be improper due to the *falsity* of the information, but rather, due to its very *truth*. Since Emson can be found liable for violating the ICFA and MCPA based on such conduct, the "Knowledge of Falsity" Exclusion does not apply to these claims.

Insurers also argue that both of these Exclusions bar coverage for the Underlying Fraud by Omission counts because the counts allege that Emson "failed to disclose...that it would share their billing information with third parties," and that Emson "intended to deceive...class members, and was fully aware of the falsity of its representations." (Doc. #24, p. 23). There are, however, allegations within these counts that neither allege knowledge of violating consumers' rights nor knowledge that any representations were false. (Doc. #16, Ex. A, ¶ 123; Ex. B, ¶ 122). Thus, these Exclusions do not apply to the Fraud by Omission counts.

    C.    **The "Breach of Contract" Exclusions Does Not Apply to Relieve Insurers of Their Duty to Defend.**

Insurers next claim that the "Breach of Contract" Exclusion applies to bar coverage for the Breach of Contract counts in the *Daniell* and *Herman* Complaints. (Doc. #24, p. 23-24). As Emson previously explained, the Underlying Complaints contain a number of claims (*e.g.*, Fraud by Omission) that are wholly independent from, and would exist *"but for"* Emson's alleged breach of contract. (*See* Doc. #16, pp. 17-18). Therefore, even if the Exclusion bars coverage for the Breach of Contract counts, the presence of many other, unrelated counts prohibits Insurers from using the "Breach of Contract" Exclusion to avoid their duty to defend.

**III.    THE PRIMARY POLICIES AFFORD COVERAGE FOR "DAMAGES" SOUGHT IN THE *DANIELL* AND *HERMAN* SUITS.**

Last, Insurers argue that the Primary Policies bar coverage for the Unjust Enrichment counts in the *Daniell* and *Herman* Complaints, because these counts seek "equitable remedies such as restitution..." (Doc. #24, p. 24-25). As Emson already established (*see* Doc. #16, pp.

18-19), Insurers' "argument that no duty to defend exists under this policy because equitable relief is requested...[is] irrelevant under New York...law in an action that in addition requests monetary relief." *N.A.A.C.P. v. Acusport Corp.*, 253 F.Supp.2d 459, 463 (E.D.N.Y. 2003). Thus, Insurers' duty to defend is unaffected by the Underlying Unjust Enrichments claims.

## CONCLUSION

WHEREFORE, Defendant, E. Mishan & Sons, Inc. d/b/a Emson, Inc., respectfully requests that the Court enter an order granting summary judgment in its favor and against Plaintiffs, National Fire Insurance Company of Hartford and Valley Forge Insurance Company finding that Plaintiffs must provide a defense to Emson in the *Daniell* and *Herman* Suits.

Respectfully submitted,

E. MISHAN & SONS, INC.

By: _____
One of Its Attorneys

Howard B. Randell
Patti M. Deuel
Adam L. Frankel
LEAHY, EISENBERG & FRAENKEL, LTD.
33 West Monroe Street, Suite 1100
Chicago, Illinois 60603
Tel. (312) 368-4554
*Counsel for Emson, Inc.*
\\lefpl\Prolaw Files\Documents\E. MISHAN & SONS, INC\15384\MOTIONS - FEDERAL\128274.docx