UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL FIRE INS. CO. OF HARTFORD *et al.*,<br><br>                              Plaintiffs,<br><br>                  v.<br><br>E. MISHAN & SONS, INC.,<br><br>                              Defendant. | 13-cv-5774<br><br>**OPINION** |

   Plaintiffs National Fire Insurance Company of Hartford and Valley Forge Insurance Company brought this action, seeking a declaratory judgment that, under the terms of the applicable insurance policies, they are not required to defend E. Mishan & Sons, Inc. in two pending lawsuits.  Plaintiffs and defendant move for summary judgment.

   The court grants plaintiffs' motion and denies defendant's motion.

**The Facts**

*The Lawsuits*

   Plaintiffs assert that they are not required to defend E. Mishan & Sons, Inc. (doing business as Emson, Inc.) in lawsuits pending in the Circuit Court of Cook County, Illinois (the *Daniell* suit) and in the U.S. District Court for the Western District of Michigan (the *Herman* suit).  In two very similar complaints, the suits allege that Emson worked with two other companies—Quality Resources, Inc. and Sempris, LLC—to charge consumers recurring monthly fees for membership programs that purport to offer discounts, coupons, and other money-saving

1

deals.  See *Daniell* Compl. ¶¶ 1–7; *Herman* Compl. ¶¶ 1–9.  The scheme allegedly worked as follows: Emson advertised products on television and the internet.  When a consumer purchased one of Emson's products through its website, the consumer provided certain private information—such as their phone number, address, and credit-card account information—in order to complete the transaction.  Then, unbeknownst to the consumer, Emson transferred the consumer's information to Quality Resources.  Quality Resources, under the guise of confirming the purchase from Emson, called the consumer and attempted to get him to enroll in "free trials" of subscription programs offered by Sempris.  The information about the Sempris membership programs was allegedly deceptive and designed to trap customers into recurring credit-card charges once the free-trial period expired.

Emson's conduct—passing along the consumer's credit-card and billing information—is at the heart of the scheme.  For example, the *Daniell* complaint states:

> [R]ather than protect the sensitive information shared by the consumer (as any consumer would reasonably believe), Emson transfers this information to its business partner—Quality Resources—who then uses it to initiate unsolicited telephone calls to consumers marketing Sempris Membership Programs.

*Daniell* Compl. ¶ 3.  The complaint goes on to describe how this practice, known as "data pass," is prevalent in deceptive telemarketing schemes.  See *Daniell* Compl. ¶¶ 14–16.  In total, the *Daniell* complaint includes more than a dozen paragraphs of allegations about the transfer of private customer information.  See, e.g., *Daniell* Compl. ¶¶ 3, 4, 14–16, 32, 33, 55, 102, 104, 115, 123, 148–50.  The *Herman* complaint contains similar allegations.  See *Herman* Compl. ¶¶ 2–3, 15–16, 33–34, 57, 101–02, 126, 151–54, 164, 179.

The *Herman* suit claims that Emson's conduct constitutes a violation of the Michigan Consumer Protection Act, M.C.L. § 445.903, and the Telephone Consumer Protection Act, 47

U.S.C. § 227; and various common-law torts.  Similarly, the *Daniell* suit claims that Emson's conduct constitutes a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, and various common-law torts.

*The Insurance Policies*

Emson is the named insured under five primary commercial general liability policies issued by National Fire Insurance Company of Hartford that provided coverage from March 2, 2007, through March 4, 2011, and March 4, 2012, through March 4, 2013.  Emson also had a primary commercial general liability policy issued by Valley Forge Insurance Company, effective from March 4, 2011, through March 4, 2012.  Each of these policies provides liability coverage—indemnity and defense obligations—for "personal and advertising injury."  The policies define "personal and advertising injury" to include "oral or written publication, in any manner, of material that violates a person's right to privacy."

The policies also contain five exclusions relevant to this case.  First, the policies excludes coverage for "personal and advertising injury arising directly or indirectly out of an act or omission that violates" the Telephone Consumer Protection Act or "any federal, state, or local statute… that addresses or prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information."  Second, there is no coverage under any policy for injuries arising out of a breach of contract.  Third, the policies exclude coverage for knowing violations of another's rights.  Fourth, the policies exclude coverage for knowing dissemination of false information.  Fifth, the polices do not cover equitable remedies.

Emson tendered the complaints to its insurers, but the insurers denied that they had any obligation to defend the suits. Subsequently, the insurers brought this action, seeking a declaratory judgment about their duty to defend the suits under the policies. Now all parties move for summary judgment.

## Discussion

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). Here, the Parties do not assert that there are issues of material fact. Instead, they dispute the legal meaning of the Policy's coverage.

Under New York law, "the insurer's duty to furnish a defense is broader than its obligation to indemnify." Hugo Boss Fashions, Inc. v. Fed. Ins. Co., 252 F.3d 608, 620 (2d Cir. 2001). "The exceedingly broad contours of an insurer's duty to defend have been articulated clearly and repeatedly by the New York Court of Appeals." Century 21, Inc. v. Diamond State Ins. Co., 442 F.3d 79, 82 (2d Cir. 2006). A defense obligation may be avoided "only where there is no possible factual or legal basis on which an insurer's duty to indemnify under any provision of the policy could be held to attach." Century 21, 442 F.3d at 82–83.

To determine if a defense obligation exists, courts "compare the allegations of the complaint to the terms of the policy." A. Meyers & Sons Corp. v. Zurich Am. Ins. Grp., 545 N.E.2d 1206, 1208 (N.Y. 1989). "If the facts alleged raise a reasonable possibility that the insured may be held liable for some act or omission, then the insurer must defend." A. Meyers, 545 N.E.2d at 1208. "The insurer's duty to defend the entire action is triggered even if only one claim is

potentially covered by the insurance policy." Bridge Metal Indus., L.L.C. v. Travelers Indem. Co., 812 F. Supp. 2d 527, 534–35 (S.D.N.Y. 2011).

*Coverage under the Policies*

The Court must determine whether the allegations against Emson, "liberally construed," are "within the embrace" of the policies—that is, whether the lawsuits' claim that Emson passed on private customer data to Quality Resources is within the policy's coverage for publication of material that violates a person's right to privacy.

When Emson's alleged conduct is compared with the terms of the policies, it is evident that the *Daniell* and *Herman* complaints allege "publication" of "material that violates a person's right of privacy." The complaints allege that Emson disclosed its customers' private billing and credit-card information to a third party. Consumers certainly have a right to privacy in their personal financial information, see, e.g., Statharos v. New York City Taxi & Limousine Comm'n, 198 F.3d 317, 322–23 (2d Cir. 1999), so sharing that information violates the consumers' privacy rights. Accordingly, the claims alleged in the *Daniell* and *Herman* complaints "arguably arise from covered events." Nat'l Cas. Co. v. Vigilant Ins. Co., 466 F. Supp. 2d 533, 538 (S.D.N.Y. 2006).

*Coverage Exclusions*

The insurers can be relieved of their duty to defend Emson if the allegations fall within an exclusion to the policies' coverage. The insurers must demonstrate that the allegations of the complaint can be interpreted only to exclude coverage—that is, the allegations of the underlying complaint are solely and entirely within the policy exclusions. Bridge Metal, 812 F. Supp. 2d at 542. Here, the insurers contend that five exclusions eliminate their obligation to defend Emson.

But the court need only focus its attention on one—the exclusion for knowing violations of another's rights—because all of the allegations in the complaint fall within this exclusion.

Insurers contend that Emson's acts remove the policy from coverage under the exclusion for knowing violations of another's rights. Under New York law, this exclusion does not eliminate the duty to defend if it is possible for Emson to be held liable without a showing of an intent to injure. See Bridge Metal, 812 F. Supp. 2d at 545. The court again looks to the allegations in the complaint. Here, it is readily apparent that Emson's alleged conduct was intentional and knowing. The complaints allege that Emson intentionally passed along the consumers' private information as part of a scheme to defraud those consumers. And, of course, this conclusion flows naturally from Emson's own arguments for coverage under the policies' personal-and-advertising-injury clause—Emson contends that its alleged conduct violated the consumers' right to privacy in their financial information. In sum, because the allegations of the complaints are solely and entirely within the policy exclusions, the insurers have no duty to defend the suits.

## Conclusion

Plaintiffs' motion for summary judgment is granted. Defendant's motion for summary judgment is denied. This opinion resolves the motions listed as document numbers 15 and 25 in this case.

So ordered.

Dated:   New York, New York
         September 16, 2014

Thomas P. Griesa
United States District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/16/15

6